Maria A. MITCHELL, Appellant–
Respondent,

v.

Bobby A. MITCHELL, Appellee–
Petitioner.

No. 71A03–0611–CV–00533.

Court of Appeals of Indiana.

Aug. 8, 2007.

Fred R. Hains, Peter M. Yarbro, Hains Law Firm, LLP, South Bend, IN, Attorneys for Appellant.

## OPINION

VAIDIK, Judge.

### Case Summary

Maria Mitchell ("Maria") appeals the trial court's order setting aside and vacating a contempt citation and discharging a Rule to Show Cause, both of which were issued to her former husband, Bobby Mitchell ("Bobby"), for failing to perform according to the hold harmless provisions of their dissolution decree. Maria argues that the hold harmless provisions of the decree were enforceable through contempt proceedings, and therefore, the contempt citation was wrongly vacated and set aside, and the Rule to Show Cause was wrongly discharged. Because there was no money judgment here requiring one party to pay a fixed sum of money to the other, and thus, the trial court erroneously concluded that it could not use its contempt powers, we find that the trial court abused its discretion by vacating and setting aside the contempt citation and by discharging the Rule to Show Cause. We reverse and remand.

### Facts and Procedural History

On May 4, 2000, the trial court issued a Decree of Dissolution that effectively ended the marriage of Bobby and Maria. The dissolution decree generally divided the parties' jointly owned properties, which consisted of a residential home and two duplex rental properties, and the parties' joint debts, which consisted of a $3250.00 debt on a Visa credit card, a $3902.00 debt on a Sears charge account, and a $6830.00 debt on a Discover Card. On May 8, 2003, the trial court, pursuant to the parties' joint stipulation, entered an order modifying the original dissolution decree ("modified dissolution order"). The modified dissolution order provided, in pertinent part:

2. [Visa] Card and Sears Credit Card. The Husband shall assume and be solely responsible for paying the balances on the [Visa] and the Sears charge cards and shall make contact with the holders of these charge accounts, make arrangements to bring these accounts current, and make minimum monthly payments on the accounts. The Husband shall, in writing, with copies to the Wife and Wife's counsel, notify the respective creditor of his assuming the sole responsibility of paying the creditor. This shall be done on or before March 13, 2003. The Husband shall hold harmless the Wife from the obligations that he is assuming or has assumed in the past. The Husband, upon refinancing or sale of either his principal residence or the investment property that he was awarded in the Decree, shall pay in full the Discover, [Visa] and Sears charge accounts upon either his refinancing of his principal residence or the investment property awarded in the Decree, or upon the sale of either property and further cause the Wife's name to be removed permanently from those accounts.

\*　　\*　　\*　　\*　　\*　　\*

4. Refinancing/sale of marital properties. Both parties shall make every reasonable effort to refinance or sell the properties each acquired pursuant to the Decree so as to remove the other parties' name from the mortgage obligation.

Each party shall place with a licensed real estate broker their rental or investment properties awarded to them at a price suggested by the real estate agent within ninety (90) days of the Court approving this Stipulation. Each shall exchange information as to their efforts in refinancing or sale of their investment or rental properties and, in the Husband's case, refinancing of his personal residence.

\* \* \* \* \* \*

6. Hold harmless. Each Party shall hold harmless and indemnify the other from any liabilities, to include fees for a breach of this Stipulation and either party may seek this Court's authority in enforcing the terms of this Stipulation for utilization of this Court's contempt powers or legal sanctions.

Appellant's App. p. 23–24.

In September 2003, Maria filed a Verified Information In Contempt, which alleged that Bobby had failed to comply with paragraph two of the modified dissolution order because he failed to pay the Visa, Sears, and Discover credit accounts. Thereafter, the trial court issued a Rule to Show Cause, held a hearing, and later issued an order finding Bobby in contempt for failing to comply with paragraph two of the modified dissolution order. The trial court afforded Bobby the opportunity to purge himself of the contempt citation by fully complying with the modified dissolution order, which he did not do.

Shortly thereafter, Maria filed an Emergency Motion to Appoint Commissioner because Bobby was not making the mortgage payments on either of the two properties he was awarded, was in default on one of the properties, and was not holding Maria harmless or indemnifying her from any damages arising out of his ownership and control of the properties. The trial court reserved appointing a commissioner and instead ordered Bobby to provide proof that, as required by paragraph four of the modified dissolution order, the properties had been listed for sale with a licensed real estate broker or that Maria's name had been removed from any mortgage or other financial obligation on the two properties awarded to Bobby. Bobby presented no evidence to indicate that he complied with the modified dissolution order, and the trial court, therefore, later appointed a commissioner to sell the properties.

Maria filed a second Verified Information In Contempt in May 2004 and a third in November 2004. Both contempt petitions alleged that Bobby had failed to make payments on the credit cards as required by paragraph two of the trial court's modified dissolution order. On November 19, 2004, the trial court held a hearing and again found Bobby in contempt for violating the modified dissolution order. The trial court sentenced him to thirty days in jail but deferred implementation of the jail sentence for four months, during which time the trial court ordered Bobby to make payments of $100 per month on each credit card, with proof of payment to Maria's attorney.

In May 2005, Wells Fargo, the bank that held the mortgage on the duplex rental property that was awarded to Bobby, filed a Complaint for Foreclosure of Note and Mortgage against Bobby and Maria. In July 2005, Maria filed a fourth Verified Information In Contempt, alleging that Bobby had failed to make the $100 monthly payments on the credit card debts as previously ordered by the trial court and had failed to comply with the modified dissolution decree because he failed to make every reasonable effort to refinance or sell the two properties and failed to hold her harmless from the obligations upon the properties. The trial court then issued a

Rule to Show Cause, held a hearing on the matter, and reserved its ruling. The trial court judge remarked at this hearing, "I'm going to have to take a look at a couple of recent cases, because the Supreme Court has placed some limitations on the courts imposing executed sentences on property only matters, and if I find that I do in fact have the power to do the executed sentence, I intend to do so." August 19, 2005, Hr. Tr. p. 4–5.

In January 2006, Wells Fargo filed an Agreed Judgment and Decree Foreclosing Note and Mortgage that defaulted both Bobby and Maria on the mortgage lien for the duplex rental property that was previously awarded to Bobby. In February 2006, Maria filed a fifth Verified Information In Contempt due to Bobby's failure to indemnify and hold her harmless from the mortgage lien on his duplex rental property as required by the original dissolution decree and the modified dissolution order. That same day, the trial court issued a Rule to Show Cause, and in March 2006, the trial court held a hearing and deferred its ruling.[1] The trial court judge remarked at this hearing,

> This afternoon, I'm going to look to see if I can enforce post-judgment property matters by findings of contempt. If I can, then I'm going to use it because it's gone on long enough, and the only time you—you know, you come in here with a different story every time, [Bobby].

Every time you've been here you got a little different story than the last time about how things are going to get better if you get more time. Things don't get better. You're given more time and things don't get better.[2]

March 3, 2006, Hr. Tr. p. 10.

The trial court then appointed counsel for Bobby.[3] In October 2006, the trial court, after holding a hearing on all of the pending issues, issued an order that provided, in pertinent part:

> The principle [sic] issue before the Court relates to the extent which the Court can use its contempt powers to enforce its orders on property matters post-dissolution. The issue arises due to Petitioner Bobby Mitchell['s] failure to hold harmless and indemnify the Respondent Maria Mitchell from a certain mortgage lien as required by the Decree of Dissolution. Petitioner's counsel directs the Court to the case of *Merritt v. Merritt*, 693 N.E.2d 1320 (1998 Ind. Ct. of App.), wherein the Court held that a hold harmless provision was a property award not enforceable though contempt proceeding[s]. The Court finds that the *Merritt* case is on point to the case at bar. The property [sic] remedy here is for Respondent to seek a damage award for any losses she may have incurred.
>
> Therefore, the previously issued contempt citation is set aside and vacated

---

1. At this hearing, Maria's attorney noted the negative effect that Bobby's failure to hold Maria harmless on the now foreclosed duplex rental property could have on Maria's employment situation:

   [Maria] is a customs officer down in the Atlanta area and it's a security-type situation. They look at her credit reports, and although she just on December 12 renewed her customs badge, and this coming year—well, actually this year when it comes to renewing it[,] it will have some impact on her job.

March 3, 2006, Hr. Tr. p. 4–5.

2. At this hearing, Maria remarked, "This is the 34th time I have been in Court after my decree." March 3, 2006, Hr. Tr. p. 10.

3. The trial court noted that because Maria was "requesting that [Bobby] be incarcerated ... the Court [was] required to appoint counsel" for Bobby. September 20, 2006, Hr. Tr. p. 3.

and the Rule to Show Cause is discharged.

Appellant's App. p. 9–10. Maria now appeals.

### Discussion and Decision

■ On appeal, Maria contends that the trial court abused its discretion by vacating and setting aside the previously issued contempt citation against Bobby and by discharging the Rule to Show Cause issued to Bobby. Specifically, Maria contends that because Bobby failed to hold her harmless and indemnify her against a mortgage lien and other joint credit card debts as required by the modified dissolution order, the trial court incorrectly vacated the contempt citation and discharged the Rule to Show Cause. We agree with Maria.

■ We first note that Bobby failed to file an appellee's brief with this Court. When an appellee does not submit a brief, an appellant may prevail by making a *prima facie* case of error. *Village of College Corner v. Town of West College Corner*, 766 N.E.2d 742, 745 (Ind.Ct.App.2002). *Prima facie* in this context is defined as "at first sight, on first appearance, or on the face of it." *Id.* Such a rule protects this Court and relieves it from the burden of controverting arguments advanced for reversal, a duty that properly remains with the appellee. *Id.*

■ The trial court enjoys discretion in determining whether a party is in contempt of court, and its decision will be reversed only for an abuse of discretion. *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind.Ct.App.2000). A court will be deemed to have abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* As with other sufficiency matters, when reviewing a trial court's determination on contempt matters, we will neither reweigh evidence nor judge witness credibility. *Id.* We will affirm unless, after a review of the entire record, we have a firm and definite belief that a mistake has been made by the trial court. *Id.*

Here, the trial court erroneously set aside and vacated the contempt citation and mistakenly discharged the Rule to Show Cause. Indiana Code § 31–15–7–10(1) provides, "Notwithstanding any other law, all orders and awards contained in a dissolution of marriage decree or legal separation decree may be enforced by ... contempt." However, the trial court based its decision to set aside and vacate the contempt citation and to discharge the Rule to Show Cause solely on *Merritt v. Merritt*, 693 N.E.2d 1320 (Ind.Ct.App. 1998), *trans. denied.*

In *Merritt*, the dissolution decree ordered the former husband to pay a second mortgage on the marital residence and to hold harmless his former wife from the joint obligation. *Merritt*, 693 N.E.2d at 1321. The former husband filed for bankruptcy and did not list his obligation to hold his former wife harmless on the second mortgage. *Id.* at 1322. The former wife borrowed money from her brother in order to satisfy the second mortgage and then filed a contempt petition, asking the trial court to enforce the hold harmless provision of the dissolution decree. *Id.* The trial court concluded that any obligation imposed by the hold harmless provision was discharged in the former husband's bankruptcy. *Id.* at 1321. We affirmed and held that the hold harmless provision constituted an award of property, not a support obligation, and that therefore it was dischargeable in bankruptcy. *Id.* at 1324. As the debt was discharged in bankruptcy, the obligation could not be enforced. *Id.* But, we went on to say in *dicta*, "[B]ecause [a]

hold harmless provision constitute[s] a property settlement award, it may not be enforced through contempt proceedings. Property settlement agreements incorporated into a final decree of dissolution may not be enforced by contempt citation." *Id.* We find this *dicta* to be too broad.[4]

*Merritt* relied on *Coleman v. Coleman*, 539 N.E.2d 34, 35 (Ind.Ct.App.1989), as the sole authority to support this *dicta*. In *Coleman*, we held that a former husband's failure to pay fixed monthly installments to the former wife pursuant to a property settlement agreement incorporated into a dissolution decree could not be enforced by contempt. *Coleman*, 539 N.E.2d at 34–35. In reaching this holding, we relied on the Indiana Constitution:

> Because the Indiana Constitution Article 1, Section 22 forbids imprisonment for debt, it has been held that contempt may not be used to enforce a dissolution decree ordering one party to pay the other a fixed sum of money, either in a lump sum or installments. These cases rest on the theory that such a *money judgment*, like any other judgment debt, may be enforced by execution.

*Id.* at 34 (emphasis added). The decision in *Coleman* indicates that awards of a fixed amount of money payable to one party from the other party are not enforceable by contempt. Recently, we reaffirmed that a trial court may not use its contempt powers to enforce a *money judgment* requiring one party to pay the other party a fixed sum of money. *Dawson v. Dawson*, 800 N.E.2d 1000, 1004 (Ind.Ct. App.2003).

■ While these holdings make clear that judgments requiring one party to pay the other party a fixed amount of money

are not enforceable by contempt, these holdings do not stand for the proposition that contempt proceedings may not be used to enforce compliance with *any* property settlement agreement incorporated into a dissolution decree. *See id.* at 1006 (contempt was appropriate for failure to perform a provision of the dissolution decree) (citing *Cowart v. White*, 711 N.E.2d 523, 531 (Ind.1999), *aff'd on reh'g*, 716 N.E.2d 401 (Ind.1999)); *Thompson v. Thompson*, 458 N.E.2d 298, 300 (Ind.Ct. App.1984) (contempt may be used to enforce a court's decree that one party pay the other's creditors). If a final money judgment—one requiring a person to pay a fixed sum of money to the other party—is entered, contempt is not an available remedy for noncompliance. Indiana Trial Rule 69 is the correct remedy for noncompliance with a money judgment. However, in the absence of a money judgment, contempt is an available remedy for noncompliance with a dissolution decree. *See* Ind. Code § 31–15–7–10(1).

The situation here does not involve a money judgment requiring Bobby to pay a fixed sum of money to Maria. Rather, Bobby has been ordered to pay and hold Maria harmless from payment of the mortgage and the credit card debts. We hold that the modified dissolution order did not constitute a money judgment requiring one party to pay a fixed sum of money to the other party, and therefore, the trial court was not barred from using its contempt powers to enforce compliance with the order. Thus, the trial court abused its discretion in vacating and setting aside the contempt citation and discharging the Rule to Show Cause. As such, Maria has demonstrated a *prima facie* case of error.

---

**4.** Nevertheless, *Merritt* was correctly decided, as the former husband's debt was discharged in bankruptcy and, therefore, could not have been enforced through contempt or execution.

Therefore, we reverse the trial court's order and remand with instructions to enter a finding of contempt and assess the appropriate punishment against Bobby for failing to comply with the modified dissolution order.

Reversed and remanded.

SULLIVAN, SR. J., and ROBB, J., concur.