### In re the PATERNITY OF M.F.

**N.F., Appellant–Respondent,**

v.

**J.T., Appellee–Petitioner.**

No. 10A01–1101–JP–15.

Court of Appeals of Indiana.

Nov. 9, 2011.

A. David Hutson, Smith Carpenter Thompson Fondrisi Cummins & Lewis, LLC, Jeffersonville, IN, Attorney for Appellant.

## OPINION

BROWN, Judge.

N.F. ("Mother") appeals the trial court's order finding her in contempt of court. Mother presents one issue, which we revise and restate as whether the trial court erred in finding her in contempt. We affirm in part, reverse in part, and remand.

The relevant facts follow. Mother and J.T. ("Father") have a daughter, M.F., who is fourteen years old. Mother resides in Jeffersonville, Indiana, and Father resides in Miramar, Florida. In April 2010, Father filed a motion for modification of parenting time. After a hearing, the trial court approved an order on July 6, 2010, which provides in part that Father "is to receive Parenting Time where Distance is a factor," that "the parties shall share the cost of travel expenses (50/50)," that "for winter break 2010, [Father] shall have the minor child from the date school lets out for seven days thereafter," and that "the parties shall alternate Christmas day thereafter." [1] Appellant's Appendix at 9.

On September 1, 2010, Father filed a motion to modify support.[2] A hearing on the motion was initially scheduled for November 4, 2010 but, on October 1, 2010, was rescheduled for December 16, 2010.

On Saturday, December 11, 2010, Mother and Father spoke with each other by phone, Father stated that he would like to change his visitation with M.F. to the second week after Christmas, and Mother told Father that she did not have a problem with that but that she had scheduled appointments for M.F. during that time due to M.F.'s school schedule and Mother's

---

1. The order is titled "Order of 6/25/10;" however, the order was signed on July 6, 2010 and the chronological case summary (the "CCS") shows an entry on July 6, 2010 stating "Order of 6–25–10 submitted and approved." *See* Appellant's Appendix at 3, 9–10.

2. The record does not contain a copy of this motion.

work schedule and that she would check on the following Monday to see if it were possible to change the appointments.

On December 13, 2010, Mother called Father to make him aware that she was unable to change M.F.'s appointments and that she had found a flight from Louisville, Kentucky, to Miami, Florida, for December 18, 2010, and a return flight to Louisville for December 24, 2010. On December 14, 2010, Mother and Father exchanged several text messages related to the dates that M.F. would fly to Florida. In a text message to Mother, Father indicated that he was scheduling M.F. to return to Indiana on either December 24 or 25, 2010, and Mother sent a text message to Father stating that it was not acceptable for M.F. to return on December 25, 2010. Father sent a text message to Mother indicating that he did not have the money for the flight on December 24, 2010. Mother sent a text message to Father stating that she would see Father on Thursday, which was December 16, 2010, the date of the scheduled court hearing on Father's motion to modify support, and Father sent a text message to Mother stating that they would talk in court.

The court held a hearing on Father's motion to modify support on December 16, 2010 as scheduled.[3] An entry for December 16, 2010 in the CCS indicates: "Not Present: Petitioner [Father]; Respondent [Mother]." *Id.* at 4. The court granted Mother's motion to continue, over Father's objection, and set the matter for March 11, 2011. Also on December 16, 2010, Mother sent a text message to Father asking "I thought we were going to talk in court & u did show ? ?" *Id.* at 18.

While M.F.'s last day of school prior to Christmas break was originally scheduled to be Friday, December 17, 2010, the school had scheduled two days—December 20 and 21, 2010—as possible make-up days. Due to a snow day the school scheduled "a snow make-up day on Monday, December 20th." Respondent's Exhibit 1. In addition, a school play was rescheduled for that same day.

On December 17, 2010, Father sent a text message to Mother stating "Ok [M.F.] is flying out of Cincinnati tomorrow morning and she will be back on the 24 I will email you the itinerary in a bit." Appellant's Appendix at 19. Mother sent a text message to Father stating that she had to work on December 18, 2010, because she had taken time off work to go to court on December 16, 2010. After Mother and Father exchanged several text messages regarding their disagreement over the flight arrangements, Father sent a text message to Mother stating: "Just sent you the email. [M.F.] is flying out of Lexington at 6.00 pm due to you [sic] conflict with work tomorrow the 18. Returns the 24 at 5.30 pm into Lexington." *Id.* at 19. The email Father sent to Mother indicated that M.F. would be leaving from Lexington on Saturday, December 18, 2010, at 5:59 p.m., and returning to Lexington on Friday, December 24, 2010. The email also indicated that the departure time from Lexington was in the evening to avoid issues with Mother's work on Saturday. Mother sent a text message to Father stating that she "got the email however that won't work." *Id.* Mother did not place M.F. on the flight that Father had arranged.

On or about December 20, 2010, Father filed a Motion for Citation for Contempt of Court and Motion for Emergency Hearing, and the trial court set an emergency hearing for December 21, 2010. On December 21, 2010, Mother, by counsel, filed an "Ob-

---

3. A transcript of the December 16, 2010 hearing is not included in the record. The recited facts related to the hearing and Father's motion to modify support are taken from the CCS.

jection, Motion for Continuance, and Motion to Prevent Telephonic Testimony of [Father]," which stated in part that Mother's counsel was given less than twenty-four hours notice of the hearing and Mother was not given sufficient notice of the hearing and requested the court to reschedule the hearing. *Id.* at 14.

The trial court held the emergency hearing on December 21, 2010, at which Father appeared by phone. At the hearing, Father's counsel stated that Father had purchased airfare for M.F., that M.F. had not taken the flight which he had arranged, and that he had attempted to contact Mother by phone, email, and text message but received no response. Mother's counsel stated that he had not been able to contact Mother prior to the hearing, that no evidence or testimony had been admitted upon which the court could make a decision, and that he would like additional time to get in touch with Mother. Father testified by phone that, on the morning of Friday, December 17, 2010, he had purchased tickets for M.F. to travel to Florida and that he had been unable to reach either Mother or M.F. since December 17, 2010. Father also testified that his understanding had been that Mother wanted M.F. to be in Indiana no later than December 23, 2010, that the seven days did not begin until Saturday, December 18, 2010, because M.F.'s last day of school was Friday, December 17, 2010, and that seven days after December 18, 2010 actually fell on Christmas Day. Father testified that Mother did not want M.F. to return on Christmas Day and that they had several exchanges indicating that it would be settled on December 16, 2010 in court. Near the end of the hearing, the court continued the hearing to the following day and ordered Mother to appear in court on December 22, 2010, at 9:00 a.m.

At the December 22, 2010 hearing, Mother indicated that her understanding of the court's order regarding visitation was that Father was supposed to have parenting time with M.F. in Florida beginning after school ended for Christmas break. Mother testified that the last day of school for M.F. was originally scheduled to be Friday, December 17, 2010, but due to a snow day, the last day of school was rescheduled for December 20, 1010. Mother also presented an exhibit containing a print-out of the school's website notifying parents of the schedule change. Mother testified that Father and Father's counsel had copies of M.F.'s school calendar which stated there was a possibility of snow make-up days on December 20 and 21, 2010, and that she knew Father was aware of the school website because he previously obtained information from the site. Mother further testified that, during her phone call with Father on Monday, December 13, 2010, she had made Father aware that there could be a snow day but that she did not know at that time.

Mother indicated that M.F. did not board the plane on Saturday, December 18 because she had school on Monday, December 20, and also had a play that "was scheduled originally for Thursday evening and that was also changed to Monday the 20th." Transcript at 36. Mother further indicated that she received Father's email stating that he arranged a flight which was scheduled to leave from Lexington, Kentucky, and that she made Father aware that she would not be able to do that "prior to [Father] purchasing the ticket." *Id.* Mother testified that she and Father considered having M.F. visit Father the week after rather than the week before Christmas, and that she had been unable to reschedule the appointments she had made for M.F. during the week after Christmas. Mother testified that she had told Father about a Friday flight out of Louisville, Kentucky and that Father said that he would look into it. Mother testi-

fied that the first she heard of the flight departing from Lexington was on Friday, December 17, 2010; that she was a manager at a kitchen; that she had to trade schedules in order to be in court on Thursday, December 16, 2010; and that she had agreed to work from 10:00 a.m. to 7:00 p.m. on Saturday, December 18, 2010. On cross-examination, Mother acknowledged that she did not expressly inform Father that M.F.'s school had a make-up day on December 20, 2010, and Father testified by phone that he had not been aware that December 20, 2010, would be used to make up a snow day.

Father's counsel asked the court to require Mother to pay the costs of transportation to Florida and Father's attorney fees and to find Mother in contempt. Mother's counsel argued that there was no basis for the court to find Mother in contempt and thus no basis for the court to grant the relief Father's counsel requested. Mother's counsel further argued that the last day of school was the previous day and thus there was no basis to find Mother in contempt and that Mother should pay for half of any flight that was booked for M.F., but that Mother should not be liable for the cost of the flight that was booked as a result of a mistake.

The trial court stated that it was "going to find [Mother] in contempt for what [she did] to frustrate this court order." Transcript at 66. The court stated:

> Whether or not it would have been on the 17th or whether or not it would have been yesterday. Really had you bought the ticket based on the 20th being the last school day and coming into court today saying I have the tickets to travel on the 21st, that would have been some sign of good faith. But I don't see any sign of good faith on your part, ma'am.

*Id.* After some discussion, the court ordered Mother to purchase a round-trip ticket so that M.F. would travel to Florida on December 27, 2010, and return on January 2, 2011. The court also stated: "I'm going to assess you attorney's fees in the sum [of] three hundred dollars, payable to [Father's counsel] in thirty days for your contempt." *Id.* at 70. On December 27, 2010, the trial court issued a written order, which provided in part:

1. [Mother] is found to be in Contempt of this Courts [sic] previous Order of 6/28/10.

2. [Mother] shall be responsible for the cost of transportation to and from Ft. Lauderdale Florida for the minor child with travel to begin on 12/27/10 with the child to be returned on 1/2/11.

3. [Mother] is further ordered to pay attorney's fees to [Father's] attorney in the amount of $300.00 to be paid within 30 days of 12/22/10.

Appellant's Appendix at 7.[4]

■■■ The issue is whether the trial court erred in finding Mother in contempt. Whether a party is in contempt of court is a matter within the trial court's discretion, and its decision will be reversed only for an abuse of that discretion. *J.M. v. D.A.,* 935 N.E.2d 1235, 1243 (Ind.Ct.App.2010) (citing *Norris v. Pethe,* 833 N.E.2d 1024, 1029 (Ind.Ct.App.2005)), *reh'g denied.* A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* (citing *Mitchell v. Mitchell,* 871 N.E.2d 390, 394 (Ind.Ct.App.2007)).

■■■ We initially observe that Father has not filed an appellee's brief. When an

---

**4.** The order is titled "Order of 12/21/10;" however, the order was signed on December 27, 2010, and the CCS shows an entry on

December 30, 2010 stating in part "Order Signed: 12/27/2010 of 12/21/10." *See* Appellant's Appendix at 5, 7.

appellee has not filed an answer brief, we need not undertake the burden of developing an argument on the appellee's behalf. *Henderson v. Henderson,* 919 N.E.2d 1207, 1210 (Ind.Ct.App.2010). Rather, we may reverse the trial court if the appellant presents a case of *prima facie* error. *Id. Prima facie* error means at first sight, on first appearance, or on the face of it. *Id.* If an appellant does not meet this burden, we will affirm. *Id.*

■■■■ Contempt of court "involves disobedience of a court which undermines the court's authority, justice, and dignity." *Henderson,* 919 N.E.2d at 1210 (citing *Srivastava v. Indianapolis Hebrew Congregation, Inc.,* 779 N.E.2d 52, 60 (Ind.Ct.App. 2002), *trans. denied* ). There are two types of contempt: direct and indirect. *Id.* Direct contempt involves actions occurring near the court that interfere with the business of the court and of which the judge has personal knowledge. *Id.* Contempt is indirect if it involves actions outside the trial court's personal knowledge. *Id.* "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." *Id.* (citing *Francies v. Francies,* 759 N.E.2d 1106, 1118 (Ind.Ct.App.2001), *reh'g denied, trans. denied* ).

■■■■ The trial court here found Mother to be "in Contempt of this Courts [sic] previous Order of 6/28/10." [5] Appellant's Appendix at 7. Generally, a person who willfully disobeys any order lawfully issued by any court of record or by the proper officer of the court is guilty of indirect contempt. *Henderson,* 919 N.E.2d at 1210 (citing Ind.Code § 34–47–3–1). As such, this case involves indirect contempt. *See id.* (citing *In re Paternity of J.T.I.,* 875 N.E.2d 447, 450 (Ind.Ct.App.2007) (con-

cluding that the mother's interference with the father's parenting time as provided by a court order is one of indirect civil contempt)).

■■■■ Indirect contempt "is the willful disobedience of any lawfully entered court order of which the offender has notice." *City of Gary v. Major,* 822 N.E.2d 165, 169 (Ind.2005) (citation omitted and emphasis omitted).

> It lies within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of its order. *MacIntosh v. MacIntosh,* 749 N.E.2d 626, 631 (Ind.Ct.App.2001), *trans. denied.* Unlike criminal indirect contempt, the primary objective of a civil contempt proceeding is not to punish the contemnor but to coerce action for the benefit of the aggrieved party. *Thompson v. Thompson,* 811 N.E.2d 888, 905 (Ind.Ct.App.2004), *trans. denied* .... "Nevertheless, a contempt order which neither coerces compliance with a court order or compensates the aggrieved party for loss, and does not offer an opportunity for the recalcitrant party to purge himself, may not be imposed in a civil contempt proceeding." *Flash [v. Holtsclaw* ], 789 N.E.2d [955, 959 (Ind. Ct.App.2003), *trans. denied* ].

*In re Paternity of M.P.M.W.,* 908 N.E.2d 1205, 1209 (Ind.Ct.App.2009). Further, this court has held:

> In order to be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order. The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is

---

5. Although Father's motion for citation for contempt stated that the court's order was dated June 28, 2010, the CCS does not show an order entered on June 28, 2010. As previ-

ously mentioned, the court's order titled "Order of 6/25/10" was signed on July 6, 2010 and the CCS shows entry of the order on July 6, 2010. *See* Appellant's Appendix at 3, 9–10.

violated. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order....

*Bandini v. Bandini*, 935 N.E.2d 253, 264–265 (Ind.Ct.App.2010) (citations and quotation marks omitted).

 Mother argues that the court's order "did not clearly state the circumstances of the Winter Break 2010 visit" and that the court erred by holding her "in contempt of a vague order that did not clearly require her to do the acts that she was held in contempt for failing to do." Appellant's Brief at 5. Mother points to the court's statement that it was "going to find [Mother] in contempt for what [she did] to frustrate this court order" and asserts that the order "did not specifically state the actions or inactions for which [she] was found to be in contempt." Transcript at 66; Appellant's Brief at 6. Mother argues that the court's order "did not specify how travel arrangements would be made for [Father's] 2010 winter break parenting time." Appellant's Brief at 7. Specifically, Mother argues that the court's July 6, 2010 order "did not obligate [her] to put M.F. on the flight of [Father's] choosing on the date that parenting time was to begin," that it "did not require [Mother] to tell [Father] that the reason the December 18, 2010 Lexington flight would not work is that M.F. had school scheduled for the following Monday," and that "there was nothing in the order that required [Mother] to purchase a plane ticket for M.F. after December 20, 2010." *Id.* at 8–9.

The order entered on July 6, 2010 provided in part: "That for winter break 2010, [Father] shall have the minor child from the date school lets out for seven days thereafter. That the parties shall alternate Christmas day thereafter." Appellant's Appendix at 9. The court's written order found Mother to be in contempt of court but did not set forth express reasons for the finding.

The order entered on July 6, 2010 did not expressly state that Mother was responsible for purchasing a plane ticket or otherwise arranging travel or transportation plans for M.F. to ensure that Father was able to exercise his parenting time. Instead, the order merely set forth the seven-day period during which Father was to have parenting time. Further, the record indicates that the parties were aware that the last day of school for M.F. was originally scheduled to be Friday, December 17, 2010, but that there was a possibility that the last day of school would be on Monday, December 20, 2010 or Tuesday, December 21, 2010 if the school needed to make up one or more days due to any previous snow days. The record reveals that the school's website indicated that the school would have a snow make-up day on Monday, December 20, 2010. In addition, we note that any failure by Mother to inform Father that M.F.'s school had scheduled a make-up day was not a violation of any express provision in the court's July 6, 2010 order. Further, the exchange of text messages between Father and Mother on December 17, 2010 indicates that Mother sent a message to Father that she had to work on Saturday, December 18, 2010 because she had changed her schedule to be in court on Thursday, December 16, 2010, and that Father then scheduled a flight for M.F. to fly out of Lexington, Kentucky, for 6:00 p.m. on Saturday, December 18, 2010.

 Further, we note that "[t]o avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt." *Henderson*, 919 N.E.2d at 1212 n. 3. Here, the court's order entered on December 27, 2010, did not indicate the manner in which Mother could purge herself of the contempt. *See id.* (noting that one problem with the trial court's con-

tempt order was that it did not indicate the manner in which the husband could purge himself of the contempt).

Based upon our review of the record, we conclude that Mother has presented a *prima facie* case that, under the circumstances, the trial court abused its discretion in finding her in contempt. Accordingly, we reverse that portion of the order finding Mother in contempt. *See id.* at 1210–1212 (reversing finding of contempt and noting that the court's order did not indicate how the appellant could purge himself of the contempt); *Nicholas v. Nicholas,* 482 N.E.2d 770, 771 (Ind.Ct. App.1985) (holding that the husband demonstrated *prima facie* error in the entry of the contempt judgment, noting that an order or judgment which merely declares the rights of the parties without any express command or prohibition cannot provide the foundation for contempt proceedings, and finding that a provision in the divorce decree that the husband was responsible for college expenses was indefinite and was not an express command, violation of which would give rise to a judgment of contempt). Because the court indicated that its order that Mother pay attorney fees in the amount of $300 was based upon its contempt finding, we also reverse that portion of the court's order related to attorney fees.

Although Mother does not appear to challenge the portion of the order requiring her to purchase a plane ticket for M.F., we reverse the trial court's contempt finding and award of attorney fees, in light of the facts and circumstances, we cannot say that the court abused its discretion in fashioning a remedy with respect to M.F.'s travel arrangements to ensure that Father was able to exercise parenting time during the winter break of 2010 in ordering that Mother was responsible for the cost of M.F.'s travel on December 27, 2010 and January 2, 2011.

For the foregoing reasons, we affirm in part, reverse in part and remand with instructions to vacate that portion of the order entered on December 27, 2010 finding Mother in contempt and ordering Mother to pay attorney fees of $300.

Affirmed in part, reversed in part, and remanded.

BAKER, J., concurs.

KIRSCH, J., dissents without opinion.