Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 27 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LUCILLE P. UTTERMOHLEN**
Monticello, Indiana

ATTORNEY FOR APPELLEE:

**J. DAVID ROELLGEN**
Emison Doolittle Kolb & Roellgen LLP
Vincennes, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CRAIG WATTS, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 42A01-1111-DR-523 |
| | ) | |
| BETTY (WATTS) LANKFORD, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE KNOX SUPERIOR COURT
The Honorable W. Timothy Crowley, Judge
Cause No. 42D01-9411-DR-76

**July 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Craig Watts (Father) appeals the trial court's order to pay Betty Lankford (Mother) $32,067.07 to satisfy a child support arrearage, and $3,000 to Mother's attorney for attorney fees as a penalty based on its finding he was in contempt for non-payment of child support. We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and Mother divorced on July 30, 1997. There were three minor children of the marriage: Ryan, born January 30, 1984; Jeffrey, born February 24, 1988; and Tyler, born July 20, 1990. At dissolution, the court granted Mother custody and Father visitation. The court ordered Father to pay $503.00 per week in child support for the three children. The trial court found Ryan "has Down's syndrome and the parents acknowledge that Ryan will never be self-sufficient and will require custodial care and child support past age 21." (App. at 60-61.)

On August 19, 1998, the trial court granted Father's petition to reduce his child support obligation to $400.00 per week. Beginning in 2006, Father paid a portion of the college expenses for Jeffrey, and later for Tyler. In February 2009, Father began paying only $133.33 per week to mother in child support. Father testified he calculated the new amount based on his belief he was only required to pay child support for Tyler, who was under twenty-one years old at the time. Therefore, Father reasoned, he could reduce his child support payment by 2/3 to cease his support for Ryan and Jeffrey.

On December 15, 2009, Mother filed a verified petition for contempt citation, modification of child support, college expenses, and health insurance. After a hearing, the

trial court found Father had not abided by the child support order. It held Father in contempt and ordered him to pay arrearages of $32,067.07 and $3,000.00 in Mother's attorney fees. It emancipated Jeffrey and Tyler, and ordered Father to pay $77 per week in support for Ryan.

## DISCUSSION AND DECISION

Whether a party is in contempt of court is a matter within the trial court's discretion, and its decision will be reversed only for an abuse of that discretion. *Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005). A court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Mitchell v. Mitchell*, 871 N.E.2d 390, 394 (Ind. Ct. App. 2007). When reviewing a contempt determination, we will not reweigh evidence or judge witness credibility. *Id*. We will affirm unless, after a review of the entire record, we have a firm and definite belief the trial court made a mistake. *Id*. Child support obligations in Indiana have long been enforceable by contempt proceedings. *Id*. Contempt is not appropriate unless the parent has the ability to pay the support due and his or her failure to do so was willful. *Id*.

Father argues the trial court should not have found him in contempt because even though he reduced the amount of child support paid weekly to Mother, he paid college expenses in excess of the amount required by the child support order. In February 2009, when Father began paying $133.33, Ryan was over twenty-one years old, but still living with Mother due to his disability; Jeffrey was twenty-one years old and in college; and Tyler was

not yet twenty-one years old. When asked why he changed the amount of support paid, Father stated:

> I had learned that in Indiana and most states that the age of emancipation is age 21 and I only learned that right at the time Jeffrey became 21, and so, at the time, I contacted [Mother] because, Your Honor, when we were here in '98 when we left, you talked to both of us and said I hope I don't see you all back here in this Court
>
>     * * * * *
>
> Anyway, you said any future problems or complaints I hope you two can work these things out without having to come to Court. So, I remembered that and I contacted [Mother] by email but also there was at least one or maybe two phone calls about the reduction in support, because two of them were already over the age of 21 and I had already been paying Ryan's for five extra years, at that point. So that's why I decided to . . . and I asked her if that would . . . was doable and I told her I'm assuming you will have to run this by your attorney, but I'm waiting to hear your answer. So at that time I, on my own, reduced the payment by 2/3. I never heard back from her until I was served the papers for this hearing today.

(Tr. at 31-32.)

Mother testified she and Father did not agree to change the amount of support, and when they discussed the cost of Tyler and Jeffrey's college they never agreed those payments would be in lieu of the support owed pursuant to the court's order. Father argues the money he paid towards Tyler and Jeffrey's college educations should be considered child support,[1]

---

[1] Father relies on *Vagenas v. Vagenas*, 879 N.E.2d 1155, 1160 (Ind. Ct. App. 2008), *reh'g denied*, where we held the non-custodial parent was not in contempt for failing to pay child support when he instead paid college expenses for the child pursuant to an agreement with Mother to do so.

 In *Vagenas*, the parties, Karen and William, divorced in 1998. The trial court ordered William to pay $500 a month in child support. William paid $500 per month until their child left for college, at which time the parties agreed William would pay one-half of the college expenses and child support when the child was living with Karen during winter and summer breaks. We held:

> Here, the parties entered into an agreement and abided by that agreement for approximately eighteen months before Mother filed her contempt petition. Father reasonably relied on the parties' agreement in failing to pay court-ordered child support to Mother while he was paying fifty percent of son's college expenses. Importantly, under the parties' agreement Father paid $9,201.73, which is more than the $8500 he was required to pay during that time

4

such that he did not willfully fail to pay child support since February 2009.

A party may be found in contempt of a trial court's order if he willfully disobeys it. Ind. Code § 34-47-3-1. It is well-established a non-custodial parent may not unilaterally modify a child support obligation pursuant to a gross order of support unless a court orders a modification or all of the children are emancipated or turn twenty-one years old. *Ogle v. Ogle*, 769 N.E.2d 644, 648 (Ind. Ct. App. 2002). We held in *Kirchoff v. Kirchoff*, 619 N.E.2d 592, 596 (Ind. Ct. App. 1993):

> [I]f one or more unemancipated children are also covered by the support order, the obligated parent's duty to support the remaining minor children according to the terms of the original support order continues, even after emancipation of one or more of the children, until the parent's duty to support the minor children is modified by the trial court. Therefore, as long as there remains one unemancipated minor child, the parent is required to make support payments in the manner, amount, and at the times required by the original support order. If a parent desires a reduction of the undivided support order as children become emancipated, the parent must petition the trial court to modify its order.

(internal citations omitted). Thus, regardless of the amounts Father paid for Tyler and Jeffrey's college educations, he willfully disobeyed the order to pay Mother $400 per week in child support when he unilaterally changed the manner in which he paid by paying only

---

period under the child support order. Because college expenses are in the nature of child support and there was no reduction in the amount of child support, we conclude that Father's payment of college expenses substantially complied with the child support order.

*Id*. at 1160. *Vagenas* is distinguishable. The support order before us today provided for more than one child and there was no agreement between the parties that college money would replace child support.

$133.33 to Mother. The trial court did not abuse its discretion when it found him in contempt.

## 2. Attorney Fees

The trial court awarded Mother's attorney $3,000 in attorney fees because it found Father in contempt. A determination regarding attorney fees in proceedings to modify child support is within the sound discretion of the trial court and will be reversed only on a showing of a clear abuse of that discretion. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 731 (Ind. Ct. App. 2009). In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. *Id*. Misconduct by one party that causes the opposing party to incur additional costs may also be considered. *Id*. As the contempt finding was proper, the award of attorney fees was within the trial court's discretion. *See Id*. (trial court did not abuse its discretion when it ordered Father to pay a portion of Mother's attorney fees based on the court's finding Father in contempt).

## CONCLUSION

The trial court did not abuse its discretion when it found Father in contempt because Father changed the manner in which he paid his gross support order for the three children without a court order or Mother's consent. As Father was in contempt, the trial court did not

abuse its discretion when it ordered Father to pay a portion of Mother's attorney fees.

Accordingly, we affirm.

Affirmed.

BARNES, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

CRAIG WATTS                            )

                                         )

    Appellant-Respondent,        )

                                         )

         vs.                    )     No. 42A01-1111-DR-523

                                       )

BETTY (WATTS) LANKFORD     )

                                       )

    Appellee-Petitioner.         )

                                       )

**FRIEDLANDER, Judge, dissenting**

Upon my view that the trial court's order is inequitable, I respectfully dissent from the decision to affirm it.

At the heart of it, this case involves a non-custodial parent's attempt to adapt to changing circumstances and their impact on his and his ex-spouse's financial obligations concerning their children, without having to resort to a court of law to do so. The record reflects that they had successfully done this before. Beginning in 2006 with Jeffrey's enrollment in college, Father and Mother struck an agreement as to how much each would pay toward those educational expenses, and the court was not involved. Motivated in part by the trial court's admonition in approximately 1998 that it hoped Mother and Father would be able to work out support matters between themselves without resorting to court, and perhaps

encouraged by their success in dealing with the children's college expenses, Father again attempted to resolve the present matter without going to court.

His attempt appears to me to have been well-intentioned and, from a layman's perspective, it is not substantively illogical. Incorrect, but not illogical. The primary mistake in his attempted modification is that he effected a pro-rata reduction of an in-gross support order based upon the incorrect assumption that the total amount of his obligation was comprised of three equal parts, one for each of his three children – and that he could reduce the total by one-third when he was no longer obligated to pay support for a particular child. Of course, this is not the case. "[W]hen a court enters an order in gross, that obligation … continues until the order is modified and/or set aside, or *all* the children are emancipated, or *all* of the children reach the age of twenty-one[.]" *Whited v. Whited*, 859 N.E.2d 657, 661 (Ind. 2007). Be that as it may, Father reduced his support payment to Mother by two-thirds on the rationale that the support he paid for Jeffrey and Tyler would be replaced by his payment of his share of their college expenses. He advised Mother of his intentions and reasoning and reduced his support payments accordingly. Mother waited approximately ten months before registering an objection. Although there was no express agreement between the parties with respect to the modification that Father implemented, her silence for the better part of a year after he specifically proposed and implemented the change is not insignificant and could reasonably have lead him to believe she acquiesced in the arrangement. Surely this deserves equitable consideration when determining the amount of Father's arrearage. *See Vagenas v. Vagenas*, 879 N.E.2d 1155, 1159 (Ind. Ct. App. 2008) ("college expenses are in

the nature of child support") (quoting *Borum v. Owens,* 852 N.E.2d 966, 969 (Ind. Ct. App. 2006)) (emphasis in original), *trans. denied.*

In the final analysis, the trial court determined that Father underpaid support during the relevant time period by $32,067.07. By my calculation, during that same period of time, Father paid approximately $29,510.00 toward Jeffrey's and Tyler's college expenses. For all practical purposes, however, Father's payment of college expenses counted for naught in the trial court's reasoning, and I believe the equities here dictate otherwise. Because (1) the trial court admonished the parties on a previous occasion to work out between themselves financial issues involving the children without resort to court, (2) the parties had thereafter done so with respect to the payment of college expenses, (3) Father explicitly proposed an arrangement, implemented it, and Mother failed to object and was basically incommunicado on the subject for approximately ten months before filing a contempt petition, and (4) Father paid more than $29,500.00 during the relevant time frame, I believe the trial court erred in failing to consider the amount he paid in college expenses. I would reverse and remand with instructions to calculate Father's arrearage by subtracting the amount he paid in college expenses from the amount he underpaid for the same period of time, and to enter an order to pay that amount.