## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 05 2017, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Meeks Cockerill
Winchester, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dale Bond, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Judylee W. Bond, <br> *Appellee-Respondent.* | July 5, 2017 <br><br> Court of Appeals Case No. <br> 68A01-1612-DR-2856 <br><br> Appeal from the Randolph <br> Superior Court <br><br> The Honorable Peter D. Haviza, <br> Judge <br><br> Trial Court Cause No. <br> 68D01-1310-DR-1019 |

**Bradford, Judge.**

# Case Summary

Appellant-Petitioner Dale Bond and Appellee-Respondent Judylee Bond were divorced in December of 2013. According to the terms of the parties' settlement agreement, which was incorporated in to the divorce decree, Dale agreed to continue making payments on the land contract related to the marital residence until the contract was paid in full. Dale failed to fulfill this obligation. On August 17, 2016, Judylee requested that the trial court find Dale in contempt for failing to fulfill his obligation under the terms of the parties' settlement agreement. Following a hearing, Dale was found to be in contempt. Dale subsequently challenged the contempt finding by filing a motion to correct error, which was denied by the trial court.

Dale contends on appeal that the trial court abused its discretion in denying his motion to correct error and finding him in contempt. Concluding otherwise, we affirm.

# Facts and Procedural History

The parties divorced in December of 2013. A settlement agreement entered into by the parties was incorporated into the divorce decree issued by the trial court. Pursuant to the terms of the parties' settlement agreement, the parties agreed that Dale would make monthly payments in the amount of $250 on the land contract connected to the marital residence and Judylee would maintain possession of the marital residence.

[4]     On August 17, 2016, Judylee filed a motion in which she requested that the trial court find Dale in contempt ("contempt motion"). In this motion, Judylee alleged that Dale had failed to make monthly payments on the land contract, as required by the parties' settlement agreement. The trial court conducted a hearing on Judylee's contempt motion on September 27, 2016.

[5]     During the hearing on Judylee's contempt motion, Dale admitted that the provision in the settlement agreement providing that he would assume the responsibility of paying off the balance of the land contract "was my idea, because I didn't feel like arguing with you every day." Tr. p. 8. Dale admitted that he understood that this obligation would entail making payments each month until the balance of the contract was paid off. At the time he entered into the settlement agreement, Dale was "drawing only Social Security Disability" payments of $1357.70 per month. Tr. p. 8. Dale did not have any source of income beyond the Social Security Disability payments.

[6]     Dale testified that he had continued to receive this same amount each month since the parties' divorce and was still receiving this same amount as of the date of the contempt hearing. Dale further testified that there had been a change of circumstances which had impacted his ability to pay his obligation under the parties' settlement agreement. Dale indicated that he had suffered from ongoing medical issues and had outstanding medical bills relating to these ongoing issues. Dale also testified that he had purchased a new truck the week before the hearing and would have payments on the vehicle and insurance payments relating to the vehicle going forward. Dale further indicated that he

had monthly utility bills, including an electric bill that "runs between [one] Hundred Ninety Eight to Three Hundred Dollars a month," and that he paid three hundred dollars per month in rent to his girlfriend with whom he lived. Tr. p. 13. Dale claimed that after paying all of the above-mentioned bills, he usually had "about Seventy Dollars" left over. Tr. p. 16. Dale explained that when he entered into the settlement agreement, his rent payment was significantly lower. Dale claimed that he because of his change of living arrangements, he was unable to meet his obligation as set forth in the parties' settlement agreement.

[7] In questioning Dale about his finances, Judylee asked the following:

> I am still not understanding though is when you filed for divorce and the terms on it, you knew that you would never ever be able to work again and you knew you were only going to get this amount of Social Security Disability but yet you put all the wheels in motion, got it settled in the Court Order as of 23rd of December, 2013 and I don't, I am not understanding why you would think it is okay to break that because of change of circumstances, is there a reason you think the Court Order doesn't matter or?

Tr. p. 19. Dale indicated that he did "not want to be homeless" and that he had to pay rent to his girlfriend because his girlfriend "can't meet her obligations on her own." Tr. p. 19. Judylee further questioned Dale about the wisdom of purchasing a new truck when he knew he could not meet his outstanding financial obligations, stating:

Okay. All right. The next question I have for you, why would you purchase a new truck with payments when you were in Court here before and they postponed it to give you chance to come back today and gave you a lawyer why would you go and get a new vehicle with payments on it knowing that you are already in Court to pay the house payment, it […]

Tr. p. 19. Dale responded by saying "[w]ould you want to walk from your house to this Courtroom?" Tr. p. 20. Dale acknowledged that his girlfriend owned a vehicle and that his girlfriend had shown a willingness to allow Dale to use her vehicle "when he needed to go somewhere." Tr. p. 20. Dale further acknowledged that even though he knew that Judylee had initiated contempt proceedings to compel him to meet the obligations incurred in the parties' settlement agreement, he "went ahead a got a vehicle on payments[.]" Tr. p. 20.

[8] Following the conclusion of the parties' presentation of evidence, the trial court found as follows:

> All right. At this time, I find [Dale] in contempt. He entered into an agreement. He was going to use the Social Security Disability payments to make the payment on the agreement. He has now jock[ied] himself around so he can now try and claim, oh, I don't have sufficient monies. He gets a car. I know he has got some other bills but he has entered into this agreement and it is subject to contempt. He is sentenced to sixty days at the Randolph County Jail. He can purge himself of contempt by resuming to make the payments on this land contract and he can go ahead after the land contract is finished up he can repay [Judylee] what she's paid off of it and the rate of Two Fifty per

month.  That was what the agreement … That's the Court's decision.

Tr. p. 21.

[9] On October 26, 2016, Dale filed a motion to correct error.  The trial court conducted a hearing on Dale's motion on November 15, 2016.  During this hearing, Dale argued that the trial court could not properly find him in contempt because in circumstances like those presented before the trial court, "the constitution forbids a finding of contempt."  Tr. p. 25.  At the conclusion of the hearing, the trial court took the matter under advisement.  The next day, on November 16, 2016, the trial court issued an order denying Dale's motion to correct error.  This appeal follows.

# Discussion and Decision

## I.  Standard of Review

[10] At the outset, we observe that Judylee chose not to file an Appellee's Brief.

> When an appellee fails to submit a brief in accordance with our rules, we need not undertake the burden of developing an argument for the appellee.  *McKinney v. McKinney*, 820 N.E.2d 682, 685 (Ind. Ct. App. 2005).  We apply a less stringent standard of review with respect to showings of reversible error when an appellee has failed to file a brief, and may reverse the trial court if the appellant is able to establish prima facie error.  *Id.*  In this context, "prima facie" means "at first sight, on first appearance, or on the face of it."  *Id.* (internal citations omitted).

*Whittaker v. Whittaker*, 44 N.E.3d 716, 719 (Ind. Ct. App. 2015).

Dale appeals following the denial of his motion to correct error. We review the denial of a motion to correct error for an abuse of discretion. *Faulkinbury v. Broshears*, 28 N.E.3d 1115, 1122 (Ind. Ct. App. 2015).

> The trial court's decision on a motion to correct error comes to us cloaked with a presumption of correctness, and the appellant has the burden of showing an abuse of discretion. *Cox v. Matthews*, 901 N.E.2d 14, 21 (Ind. Ct. App. 2009), *trans. dismissed*. An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Id*.

*Id*.

## II. Analysis

Divorcing parties are permitted to draft their own settlement agreements. *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006). Such agreements are contractual in nature and, once incorporated into the trial court's final order, become binding on the parties. *Id*. The dissolution court that adopted the agreement retains jurisdiction to interpret the terms of property settlement agreements and to enforce them. *Id*.

*Whittaker*, 44 N.E.3d at 719.

Indiana Code section 31-15-7-10 provides that "[n]otwithstanding any other law, all orders and awards contained in a dissolution of marriage decree or legal separation decree may be enforced by: (1) contempt[.]" However,

[d]ue to the prohibition against imprisonment for debt in Article I, § 22 of the Indiana Constitution, and "because parties may enforce obligations to pay a fixed sum of money through execution as provided in Trial Rule 69, all forms of contempt are generally unavailable to enforce an obligation to pay money." *Cowart v. White*, 711 N.E.2d 523, 531 (Ind. 1999).

*Whittaker*, 44 N.E.3d at 719. In interpreting Article I, § 22, we have held that while a trial court "may not use its contempt powers to enforce a *money judgment* requiring one party to pay the other party a fixed sum of money," in the "absence of a money judgment, contempt is an available remedy for noncompliance with a dissolution decree." *Mitchell v. Mitchell*, 871 N.E.2d 390, 395 (Ind. Ct. App. 2007) (emphasis in original).

[14] In *Mitchell*, we considered whether the trial court erred in setting aside a previously issued contempt citation against former husband. 871 N.E.2d at 394-396. The parties had entered into a settlement agreement by which former husband agreed to pay certain credit card debts and to indemnify former-wife against a mortgage lien. *Id.* at 394. Former husband failed to satisfy his obligations under the parties' settlement agreement. *Id.* at 391-93. Upon review, we concluded that the settlement agreement, as incorporated into the dissolution order, "did not constitute a money judgment requiring one party to pay a fixed sum of money to the other party, and therefore, the trial court was not barred from using its contempt powers to enforce compliance with the order." *Id.* at 395. Consequently, "the trial court abused its discretion in vacating and setting aside the contempt citation." *Id.*

In *Whittaker*, we considered whether the trial court erred by refusing to address the merits of ex-husband's contempt petition, stating that it could not find ex-wife in contempt for failing to pay ex-husband certain maintenance payments as agreed under the parties' settlement agreement. 44 N.E.3d at 717. Pursuant to the terms of the parties' settlement agreement, ex-wife agreed to pay a percentage of certain retirement benefits to ex-husband as maintenance. *Id*. at 717-18. By 2013, ex-wife had fallen $76,173.44 short of meeting this obligation. *Id*. 718. Upon review, we concluded that the case involved "a failure to perform an obligation set forth in a dissolution decree" rather than a monetary judgment in favor of one party. *Id*. at 720. In reaching this conclusion, we found that the "computation of delinquency was not an original order for payment of a fixed sum. Nor did it transform an obligation incorporated into a dissolution decree into a fixed money judgment outside the parameters of Indiana Code Section 31-15-7-10." *Id*. As such, the trial court erred in refusing to address the merits of ex-husband's contempt petition. *Id*.

Similarly, in the instant matter, there is no money judgment ordering Dale to pay a fixed sum of money to Judylee. Rather, under the terms of the parties' settlement agreement, Dale assumed the obligation to make monthly payments on the land contract associated with the marital home. Dale has failed to do so. In filing her contempt petition, Judylee merely sought to enforce Dale's obligation under the parties' settlement agreement. Given these facts considered with the plain language of Indiana Code section 31-15-7-10 and our

conclusions in *Mitchell* and *Whittaker*, we conclude that contempt was an available avenue for enforcement of Dale's obligations.

[17] On appeal, Dale claims that the trial court abused its discretion in denying his motion to correct error and in finding him in contempt, arguing that the record does not support the trial court's determination that he had the ability to pay. The trial court conducted a hearing on Judylee's motion, after which it found Dale in contempt. The trial court specifically found that despite Dale's claims to the contrary, Dale had the means to make the required payments. Upon review of the record, we cannot say that the trial court's determination that Dale had the means to make the required payments was against the "logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom." *Faulkinbury*, 28 N.E.3d at 1122. We therefore conclude that the trial court did not abuse its discretion in finding Dale in contempt or in denying Dale's motion to correct error.

[18] The judgment of the trial court is affirmed.

Najam, J., and Riley, J., concur.