In re the Marriage of Darrell Kenton
**HENDERSON, Appellant–
Respondent,**

v.

**Brittany Lee HENDERSON,
Appellee–Petitioner.**

No. 30A04–0907–CV–387.

Court of Appeals of Indiana.

Jan. 21, 2010.

Thomas E.Q. Williams, Greenfield, IN, Attorney for Appellant.

## OPINION

CRONE, Judge.

### Case Summary

Darrell Kenton Henderson ("Husband") appeals the marriage dissolution decree holding him in contempt of the trial court's provisional order regarding parenting time and awarding primary physical custody of

his two minor children to petitioner Brittany Lee Henderson ("Wife"). We reverse the finding of contempt, vacate the dissolution decree, and remand for a new hearing.

## Issues

Husband raises two issues, which we restate as follows:

I. Whether the trial court erred in finding Husband in contempt; and

II. Whether the trial court erred in refusing to hear Husband's evidence at the final hearing on the petition for dissolution of marriage.

## Facts and Procedural History

On January 2, 2009, Wife filed a marriage dissolution petition. Husband and Wife have two children, L.H., born September 17, 2006, and S.H., born March 1, 2009. On April 9, 2009, a provisional hearing was held at which custody of the two children was contested. After hearing evidence, the trial court requested Wife's attorney to submit a provisional order. On April 27, 2009, the provisional order was entered. Appellant's App. at 2. The provisional order granted the parents joint legal custody, with Wife as primary physical custodian. Tr. at 43.[1] As to Husband's visitation, the trial court ordered three non-consecutive days per week, and, after the first month of visitation, one overnight visitation per month. Id. at 44.

On May 8, 2009, Husband filed verified petitions for contempt for alleged parenting time violations on April 12, 13, 17, 20, 22, 24, 27, and 29, and May 1 and 6, 2009.[2]

On May 29, 2009, the trial court held a hearing on Husband's petitions for con-

tempt, immediately followed by the final hearing on the marriage dissolution petition. With regard to the petitions for contempt, Husband testified that Wife failed to bring the children to his residence as required by the provisional order and that he was waiting at his home to see the children on each occasion. Tr. at 60–62. Wife testified that she did not bring the children over on April 12 because she "called him the night before and he said he had nothing for them. He was expecting [her] to take all of [her] stuff over [ ] for him to use and it was agreed between both of [them] that he'd have his own stuff." Id. at 68. She also testified that Husband did not initially have a proper car seat for L.H. and that she had not brought the children to Husband recently because the children had been sick with colds. Id. at 76–77.

At the conclusion of the evidence, the trial court stated,

Um you know, it appears to me that both parties are in contempt of the court order. Um obviously um sir if you wish to exercise uh parenting time, it was specifically in the court order that you needed the proper equipment: the car seats and necessary diapers, food, clothing and other necessities for children, especially young children. Um if you did not have those she had every right to not let the children come to you if those uh- if those things were not available to you at that place. .... And apparently the two of you would rather fight and argue and victimize your children than do what the Court has ordered you and required you to do. And

---

1. Husband failed to include the provisional order in his appellant's appendix. The trial court's instructions at the provisional hearing are the basis for our understanding of the provisional order. We also observe that the chronological case summary shows that the trial court ordered that the final dissolution

decree track the provisional order. Appellant's App. at 4. Fortunately, the record includes the visitation schedule attached to the dissolution decree. Id. at 9–10.

2. Husband also failed to include these petitions in his appellant's appendix.

that means both of you. So please be advised, the Court is going to enter an order finding you both in contempt and I'm going to sentence you to one hundred and eighty days in jail. I'm going to stay that because I want something hanging over your head to enforce you because apparently nothing else will.

*Id.* at 81–82.

Following a recess, the trial court turned to the matter of the dissolution decree. The trial court noted that there was a provisional order in effect, which resolved most of the parties' disagreements, and asked whether that order could be the framework for the final dissolution decree. *Id.* at 86. Wife supported the provisional order, whereas Husband contested physical custody of the children. The court heard a summary of each side's position presented by counsel. Husband's counsel then noted that allegations of physical abuse could be raised because the children's grandmother witnessed Wife throwing one of the children to the floor. *Id.* at 90. However, the trial court did not hear any evidence and ordered Wife's counsel to prepare a dissolution decree that tracked the provisional order. The dissolution decree granted Wife primary physical custody. Appellant's App. at 7. Husband appeals.

### Discussion and Decision

■ We first note that Wife has not filed an appellee's brief. When an appellee has not filed an answer brief, we need not undertake the burden of developing an argument on the appellee's behalf. *Fifth Third Bank v. PNC Bank*, 885 N.E.2d 52, 54 (Ind.Ct.App.2008). Rather, we may reverse the trial court if the appellant presents a case of prima facie error. *Id.* Prima facie error means at first sight, on first appearance, or on the face of it. *Id.* If an appellant does not meet this burden, we will affirm. *Id.*

### I. Contempt

■ Husband asserts that the trial court erred in finding him in contempt of the provisional order. Contempt of court "involves disobedience of a court which undermines the court's authority, justice, and dignity." *Srivastava v. Indianapolis Hebrew Congregation, Inc.*, 779 N.E.2d 52, 60 (Ind.Ct.App.2002), *trans. denied* (2003). There are two types of contempt—direct and indirect. *Id.* Husband is unsure of the kind of contempt in which he was found. Direct contempt involves actions occurring near the court that interfere with the business of the court and of which the judge has personal knowledge. *Id.* Contempt is indirect if it involves actions outside the trial court's personal knowledge. *In re Contempt of Wabash Valley Hosp., Inc.*, 827 N.E.2d 50, 61–62 (Ind.Ct.App.2005). "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." *Francies v. Francies*, 759 N.E.2d 1106, 1118 (Ind.Ct. App.2001), *trans. denied.*

■ Here, the dissolution decree clearly states that the parties were found to be in contempt of the provisional order regarding parenting time. Appellant's App. at 7. Generally, a person who willfully disobeys any order lawfully issued by any court of record or by the proper officer of the court is guilty of indirect contempt. Ind.Code § 34–47–3–1. As such, this is a case of indirect contempt. *See In re Paternity of J.T.I.*, 875 N.E.2d 447, 450 (Ind.Ct.App. 2007) (concluding that mother's interference with father's parenting time as provided by a court order is one of indirect civil contempt).

■ Husband argues that the trial court erred in finding him in indirect contempt because he was not afforded the procedural safeguards for such a finding. Indirect contempt proceedings require an array of due process protections, including notice and the opportunity to be heard. *J.T.I.,*

875 N.E.2d at 450. These protections are set forth in Indiana Code Section 34–47–3–5, which provides:

(a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:

(1) before answering the charge; or

(2) being punished for the contempt; to be served with a rule of the court against which the contempt was alleged to have been committed.

(b) The rule to show cause must:

(2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

(3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

(c) The court shall, on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt.

(d) A rule provided for under subsection (b) may not issue until the facts alleged to constitute the contempt have been:

(1) brought to the knowledge of the court by an information; and

(2) duly verified by the oath of affirmation of some officers of the court or other responsible person.

In the case at bar, no rule to show cause was issued. In fact, Wife did not request issuance of a rule to show cause order against Husband. If no rule to show cause is issued in compliance with Indiana Code Section 34–47–3–5, then a court generally cannot hold a person in indirect contempt. *J.T.I.*, 875 N.E.2d at 451. However, strict compliance with Indiana Code Section 34–47–3–5 may be excused in certain circumstances.

In *Mitchell v. Stevenson*, 677 N.E.2d 551 (Ind.Ct.App.1997), *trans. denied*, on July 14, 1994, Barbara Mitchell Stevenson filed a petition which alleged that Lee Etta Mitchell had failed to comply with a prior court order that had granted Stevenson responsibility for the grave of George Mitchell ("the deceased"), including the right to purchase and maintain a monument upon his grave site. Stevenson's petition requested that the court hold Mitchell in contempt for removing Stevenson's headstone from the deceased's grave. Mitchell filed a response to Stevenson's petition in which she admitted to having removed the headstone from the deceased's grave but denied that her conduct violated a previous court order. Prior to the trial on October 24, 1994, the court did not issue a rule to show cause. Following a bench trial, the trial court found Mitchell in contempt, and she appealed, arguing that the trial court did not follow the proper procedure. Although the trial court had not issued a rule to show cause, we noted that Mitchell had notice of the impending contempt proceeding and also admitted to the actions that formed the basis of the contempt charge. Accordingly, we held that Mitchell could not claim that her rights were violated on the ground that she was not properly notified. *Id.* at 561.

In contrast, in *J.T.I.*, 875 N.E.2d 447, we held that the absence of a rule to show cause order required reversal of the contempt order. *Id.* at 452. There, Delenore Guyton filed an unverified, pro se "Petition to Enforce Parenting Time and for Contempt" against Elisabeth Irvin, but the record did not show that the petition was served upon Irvin, and she denied receiving it. *Id.* at 449. The trial court sent Irvin a notice of hearing and ordered her to appear for a hearing regarding Guyton's "motion regarding parenting time." *Id.* Attached to the notice was a copy of the

trial court's chronological case summary entry regarding Guyton's petition. However, the notice was returned undelivered and marked by the post office as "unclaimed." *Id.* at 447. At some point, Irvin learned of the hearing and filed a pro se motion for continuance. The trial court denied her motion for continuance and proceeded with the contempt hearing. Irvin did not appear at the scheduled hearing, either personally or by counsel. The trial court issued an order finding Irvin in contempt for failure to comply with the Indiana Parenting Time Guidelines. At a later hearing regarding child support, Irvin appeared with counsel and challenged the contempt finding.

On appeal, Irvin argued that the trial court erred in finding her in contempt because it had not issued a rule to show cause before making that finding. We agreed, noting that the trial court's notice of the hearing only generically advised Irvin that it would be addressing parenting time. We observed that such notice fell "far short of providing Irvin with clear, distinct, and specific facts of her alleged contemptuous acts as required by Section 34–47–3–5(b)." *Id.* at 451. We observed that Irvin did not admit to committing the contemptuous actions, which distinguished the case from *Mitchell. Id.* We reversed the contempt finding because there was "an almost complete failure to comply with [Indiana Code Section 34–47–3–5]." *Id.; see also In re Paternity of C.N.S.,* 901 N.E.2d 1102, 1105–06 (Ind.Ct.App.2009) (concluding that trial court lacked authority to hold father in indirect civil contempt for failure to pay child support, as no rule to show cause was issued before court spontaneously decided to hold father in contempt, father did not have clear notice

of contempt allegations against him, and there was clear possibility that father was indigent, yet court incarcerated him without advising him of his right to counsel or inquiring whether he was indigent); *Troyer v. Troyer,* 867 N.E.2d 216, 220 (Ind.Ct. App.2007) (reversing contempt order where appellant failed to receive notice and was not afforded a hearing).

■ This case presents a factual scenario different from both *Mitchell* and *J.T.I.* Here, no information verified by oath or affirmation was filed with the court and no rule to show cause order was issued. *See* Ind.Code § 34–47–3–5. In *Mitchell,* the appellant received service of the petition alleging that she was in contempt of the trial court's order. Thus, she had notice of the charges against her and an opportunity to directly respond to those charges. Husband, however, had no notice whatsoever because Wife did not initiate contempt charges against him. Certainly, Husband's contempt allegations against Wife did not put him on notice that he could be found in contempt. On the other hand, unlike the appellant in *J.T.I.,* Husband was present and testified at the hearing at which the trial court found him in contempt. Nevertheless, Husband had no inkling that he might be held in contempt until the trial court spontaneously found him to be in contempt. Therefore, he did not know that he should present evidence as to his compliance with the provisional order. Accordingly, we conclude that Husband has presented a prima facie case that, under these circumstances, noncompliance with Indiana Code Section 34–47–3–5 cannot be excused. We therefore reverse the trial court's finding of contempt against Husband.[3]

---

**3.** There is an additional problem with the trial court's contempt order. A "jail sentence for civil contempt must be coercive or remedial rather that punitive in nature." *C.N.S.,* 901 N.E.2d at 1106. "To avoid being purely puni-

tive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt." *Id.* Here, the contempt order did not indicate the manner

## II. Failure to Hear Evidence

Husband contends that the trial court's failure to hear evidence at the final hearing on the petition for dissolution of marriage regarding abuse of the children violated his state constitutional and statutory rights. Article 1, Section 12 of the Indiana Constitution provides, "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

This Court has noted that implicit in the constitutional right to bring a civil action is the right to present one's claim to the trial court. *Zimmerman v. Hanks,* 766 N.E.2d 752, 757 (Ind.Ct.App.2002). In *Murfitt v. Murfitt,* 809 N.E.2d 332 (Ind.Ct.App.2004), we found that Mark Murfitt's constitutional rights were violated where he was unable to attend divorce proceedings because he was incarcerated. *Id.* at 334. Specifically, we observed that

> Mark was not afforded the opportunity to protect his own interests in the divorce proceedings because he could not present his claim in regard to a distribution of the marital property. Moreover, *he was not given the opportunity to present any evidence* or challenge Vickie [Murfitt]'s credibility regarding the assets and debts which they had accumulated.

*Id.* (emphasis added).

Indiana Code Section 31–15–2–15 states, in relevant part, "At the final hearing on a petition for dissolution of marriage the court *shall* consider evidence, including agreements and verified pleadings filed with the court." (Emphasis added.) The statute requires the trial court to consider evidence. We conclude that Husband has made a prima facie showing that the trial court violated his state constitutional and statutory rights in failing to hear evidence at the final hearing on the petition for marriage dissolution. Therefore, we vacate the dissolution decree and remand for a new hearing.

Reversed in part, vacated in part, and remanded.

RILEY, J., and VAIDIK, J., concur.

in which Husband could purge himself of the contempt.