**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 15 2012, 10:09 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK ALLEN DUFF**
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| T.H. b/n/f SONJA LYNETTER (WALLS) FITZGERALD, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1109-JP-438 |
| | ) | |
| TROY HUTCHISON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
The Honorable Renee Ferguson, Magistrate
Cause No. 82D01-9608-JP-765

**March 15, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Respondent, Troy Hutchinson (Father), appeals the trial court's order suspending his parenting time with his minor child, T.H., and granting a protective order. We affirm in part and reverse in part.

## ISSUES

Father raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion when it suspended Father's parenting time with T.H. for thirty (30) days and modified Father's parenting time thereafter to be subject to T.H.'s discretion; and

(2) Whether the trial court abused its discretion when it denied Father the opportunity to testify and present witnesses in a hearing.

## FACTS AND PROCEDURAL HISTORY

The facts, as best as we can surmise from the sparse record before us, are as follows: Mother and Father were not married when Mother gave birth to T.H. on March 19, 1996. On January 21, 1997, the trial court issued an order establishing Father's paternity of T.H. The order also established that Mother would have custody of T.H., while Father would pay $67 per week in child support and would have reasonable visitation.

On April 25, 2006, Mother filed a petition to modify T.H.'s custody, requesting that: (1) the trial court modify Father's child support requirements to reflect his changed income; (2) any child support obligation be withheld from Father's wages and paid

2

directly to the clerk of the court; (3) the trial court issue an order requiring Father to immediately provide insurance and other health care information as requested by Mother; (4) the trial court amend its order concerning visitation to conform to the actual visitation being exercised by Father; and (5) the trial court award Mother reasonably attorney fees. On May 3, 2006, Father also filed a petition to modify T.H.'s custody, requesting joint legal custody and notification before Mother left town.

On July 18, 2006, the trial court issued an order requiring Father to pay $74 per week in child support, each party to pay his or her own attorney fees, and Father to have parenting time every Wednesday overnight beginning at 8:00 p.m. and every other weekend, from Saturday at 9:00 a.m. until Monday morning. The trial court also established that Father would have parenting time every Thanksgiving, while Mother would have parenting time every Christmas.

On September 13, 2010, Mother petitioned the trial court to modify its order. She requested, among other things, that the trial court order Father to contribute to the expenses of T.H.'s early college program she was taking through her high school and that the trial court order Father to pay Mother's attorney fees. On February 9, 2011, the trial court held a hearing on the petition. On February 11, 2011, the trial court issued an order increasing Father's child support obligations to $115 per week and requiring Father to pay Mother's attorney fees in the amount of $750 on or before July 1, 2011.

On April 25, 2011, Father filed an Information for indirect contempt, claiming that Mother had failed to allow him parenting time and had attempted to alienate T.H. from

3

Father by (1) calling the police; (2) making numerous phone calls to T.H. while she was with Father; (3) undermining Father's parental decision-making regarding T.H.; (4) making derogatory comments regarding Father in T.H.'s presence; (5) filing successive protective orders against Father; and (6) involving T.H. in issues between Mother and Father. The trial court set the matter for a hearing on August 3, 2011. In the meantime, on June 20, 2011, Father filed a second Information for contempt, again alleging that Mother would not allow him to have his parenting time with T.H. as ordered by the trial court on July 18, 2006. Then, on July 6, 2011, Father filed a third Information for contempt, asserting that he had filed a small claims suit requesting the payment of his attorney fees. He asked the trial court to stay its February 11, 2011 order requiring him to pay Mother's attorney fees until both parties' fees could be reevaluated in light of the small claims suit.

On July 25, 2011, Mother filed a complaint in proceedings supplemental to execution, requesting that the trial court order Father to appear and answer concerning his property, profits, and income, as he had not paid the $750 he owed her for reimbursement for her attorney fees. She also filed an Information for contempt against Father for failing to pay the $750. At some point Mother filed one or more petitions requesting protective orders against Father on behalf of herself and possibly T.H. However, neither Father nor Mother has provided these documents on appeal.[1]

---

[1] Father's counsel referred to "both" protective orders, which indicates that there was more than one protective order, but we do not know the nature of this additional protective order. (Transcript p. 18).

On August 3, 2011, the trial court held a hearing concerning the multiple Informations for contempt and the petition for a protective order on behalf of T.H. At the beginning of the hearing, Father's counsel requested that the trial court reset the hearing on the protective order for mediation, but the trial court denied his request. The trial court conducted an *in camera* interview of T.H. and then found that Mother was not in contempt of court. The trial court also granted the protective order, at which point Father requested a contested hearing on "both" of the protective orders. (Transcript p. 18). The trial court denied Father's request. The trial court also included as a condition of the protective order that Father was not allowed to contact T.H. for thirty days. Thereafter, Father could contact T.H. about parenting time, but T.H. was not required to see Father.

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION

### I. *Modification of Parental Visitation*

First, Father argues that the trial court abused its discretion in modifying his visitation rights because there was not sufficient evidence to support such a modification. Initially, we note that Mother did not file an appellee's brief. When the appellee fails to file a brief, we do not undertake the burden of developing an argument for the appellee. *Tisdial v. Young,* 925 N.E.2d 783, 784 (Ind. Ct. App. 2010). Rather, we will reverse the trial court's judgment if the appellant presents a case of *prima facie* error. *Id.*at 785. "*Prima facie* error in this context is defined as, at first sight, on first appearance, or on the

face of it." *Id.* (quoting *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind. 2006)).  Where an appellant does not meet this burden, we will affirm.  *Id.*

We review a trial court's modification of a non-custodial parent's visitation rights for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters."  *Kicken v. Kicken,* 798 N.E.2d 529, 532 (Ind. Ct. App. 2003) (quoting *In re Marriage of Richardson,* 622 N.E.2d 178, 178 (Ind. 1993)).  We set aside judgments only when they are clearly erroneous, and we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment.  *Id.*

Pursuant to Ind. Code section 31-17-4-2, a trial court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child.  The trial court should not restrict a parent's parenting time rights unless it finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.  I.C. § 31-17-4-2.  In order to assist it in determining the child's perception of whether parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development, the trial court may interview the child in chambers.  I.C. § 31-17-4-1(b).  However, a judgment based solely upon an extra-judicial inquiry can not stand.  *Truden v. Jacquay,* 480 N.E.2d 974, 979 (Ind. Ct. App. 1985).

During Mother and Father's August 3, 2011 hearing, neither party testified before the trial court.  Instead, the trial court interviewed T.H. in its chambers prior to making its decision.  This interview is not a part of the record, so we do not know what evidence the

6

trial court obtained from T.H. or how that evidence supported its decision to suspend Father's parenting time for 30 days and modify Father's parenting time thereafter. As we stated above, a judgment based solely upon extra-judicial inquiry can not stand. *See id.* Therefore, we conclude that there was not sufficient evidence for the trial court to find that Father might endanger T.H.'s physical health or significantly impair her emotional development. Thus, the trial court abused its discretion in modifying Father's visitation rights.

## II. *Hearing*

Next, Father argues that the trial court abused its discretion when it denied Father the opportunity to testify and present witnesses in a hearing on all of the issues—the protective order, Father's Informations for contempt, and the modification of his visitation rights. As we have already addressed the issue of the modification of Father's visitation rights, we will only address Father's argument with respect to the protective order and Father's Informations for contempt.

### A. *Protective Order*

Under the Civil Protection Order Act (CPOA), codified at I.C. § 34-26-5, a trial court may "*upon notice and after a hearing,* whether or not respondent appears, issue or modify an order for protection." I.C. § 34-26-5-9(a)(2) (emphasis added). In *Essany v. Bower,* 790 N.E.2d 148, 152 (Ind. Ct. App. 2003), we held that the minimum requirements for a hearing under the CPOA include the opportunity to testify, as well as

call and cross-examine witnesses. A trial court errs if it issues a protective order absent these safeguards. *See id.* at 153.

Here, the trial court interviewed T.H. *in camera*, then immediately issued its legal conclusions; in doing so, the trial court denied Father's request to hold a contested hearing at which he could testify and present witnesses. In light of our holding in *Essany*, we conclude that the August 3, 2011 hearing did not meet the minimum requirements of I.C. § 34-26-5-9. The trial court therefore erred in issuing a protective order against Father.

### B. *Contempt of Court*

With respect to Father's contempt of court claims, we note that the decision to find a party in contempt of court is within the trial court's discretion. *In re Paternity of M.F.,* 956 N.E.2d 1157, 1162 (Ind. Ct. App. 2011). We will reverse the trial court's decision only upon finding that it has abused its discretion. *Id.* As noted above, a trial court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.*

Contempt of court "involves disobedience of a court which undermines the court's authority, justice, and dignity." *Id.* at 1163 (quoting *Henderson v. Henderson,* 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). There are two types of contempt: direct and indirect. *Id.* Direct contempt involves actions occurring near the court that interfere with the business of the court and of which the judge has personal knowledge." *Id.* Contempt is indirect if it involves actions outside of the trial court's personal knowledge. *Id.*

8

Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt. *Id.* In order to be held in contempt for failing to comply with a court order,

> a party must have willfully disobeyed the order. The order must have been so clear and certain that there could be no question as to what the party must do, or must not do, and so there could be no question regarding whether the order is violated. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order.

*Id.* at 1164-65.

As Father requested the trial court declare Mother in contempt of court for allegedly disobeying a lawfully entered court order, indirect contempt is at issue in this case. However, Father has not developed any arguments or provided any evidence to support his assertion that the trial court abused its discretion when it declined to find Mother in contempt. Instead, Father devotes the section of his brief relating to the trial court's failure to provide him with an appropriate hearing to the issue of the protective order. We therefore cannot evaluate whether Mother willfully disobeyed the order. Accordingly, we will not address Father's argument any further and we find that the trial court did not abuse its discretion.

## CONCLUSION

Based on the foregoing, we conclude that: (1) the trial court erred in modifying and suspending Father's parenting time and issuing a protective order against Father; and (2) did not abuse its discretion in declining to find Mother in contempt of court.

Affirmed in part and reversed in part.

9

FRIEDLANDER, J. and MATHIAS, J. concur