## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2016, 7:12 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Ryan H. Cassman | Eric J. Benner |
| Cathy M. Brownson | Laurie D. Johnson |
| Coots, Henke & Wheeler, P.C. | Richards, Boje, Pickering, Benner & Becker |
| Carmel, Indiana | Noblesville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re The Marriage Of: | February 16, 2016 |
| Thomas Todd Reynolds, | Court of Appeals Case No. 29A04-1505-DR-265 |
| *Appellant-Petitioner*, | Appeal from the Hamilton Superior Court |
| v. | The Honorable William J. Hughes, Judge |
| Tricia Reynolds, | The Honorable David K. Najjar, Magistrate |
| *Appellee-Respondent*. | Trial Court Cause No. 29D03-0904-DR-515 |

**Brown, Judge.**

Thomas Todd Reynolds ("Father") appeals from the trial court's order finding him in contempt. We reverse.

## *Facts and Procedural History*

On January 8, 2010, the court entered a decree of dissolution which dissolved the marriage of Father and Tricia Reynolds ("Mother") and ordered that Father pay child support of $351 per week. Section 3.1 of the decree provided in part:

> For tax years 2010 and thereafter so long as he has a support obligation, [Father], upon written request from [Mother], shall make available for inspection, at the office of his counsel, or another mutually agreed upon location, his 1040 and all supporting schedules, W-2s, 1099s, and K-1s. Provided, however, at the time [Mother's] counsel reviews [Father's] 1040, [Father's] counsel shall be provided a copy of [Mother's] 1040 and all support schedules, W-2s, 1099s, and K-1s.

Appellant's Appendix at 30.

In an Agreed Order of Modification, signed by the court on March 12, 2013, and file-stamped on March 13, 2013, the court ordered that Father pay child support of fifty-one dollars per week through the Indiana State Central Collection Unit ("ISCCU"), and also that:

> In addition to the weekly child support obligation set forth above, Father shall also pay to Mother as child support 38% of 12% of the gross amount of all income he receives over and above $61,233.00 annually, and $15,305.00 quarterly.[1] This shall be

---

[1] The trial court included a footnote here which provided:

reconciled quarterly, and annually following the fourth quarter. Quarterly payments shall be paid directly to Mother rather than through the ISCCU. Father shall pay this income to Mother within thirty (30) days of the conclusion of the quarter. The first applicable quarter is the first quarter of 2013, January-March. Father shall also concurrently provide documentation of his income and calculation to Mother, including, the means by which the payment was calculated.

Appellee's Appendix at 1-2.

[4] In March 2014, Mother served a request for production of documents on Father requesting copies of income tax returns for the years 2011, 2012, and 2013 including W-2s, 1099s, and other documentation illustrative of Father's income for those years from all sources, evidence of Father's year-to-date income received from all sources, evidence of the cost of health insurance attributable to the parties and their children, if any, and certain other financial documents. In May 2014, Mother's counsel sent a letter to Father's counsel stating that it had been almost two months from the discovery request and he had not yet received a response.

---

This is the ratio suggested by the guidelines, less the ratio of parenting time credit Father receives on the attached worksheet. Per the attached worksheet the line 4/line 3 ratio is 12%. Per the attached worksheet, Father's support obligation is reduced by his parenting time credit by 72%, or in other words, as a result of the parenting time credit on line 7 of the worksheet he pays 38% of child support obligation recommended on line 6. As an example, if Father earns $161,233.00, beyond his weekly support amount he would owe Mother $4,560.00 = [($100,000 * .12) * .38].

Appellee's Appendix at 1 n.1.

[5]     On June 5, 2014, Mother filed a motion to compel discovery stating that the documents requested had not been received and that Father should be held accountable for attorney fees incurred by Mother in making the motion. On June 13, 2014, the court granted Mother's motion to compel, ordered Father to respond to the request for production of documents by June 16, 2014, and scheduled a compliance hearing for July 22, 2014, which was later rescheduled for August 5, 2014. On July 22, 2014, Father filed a motion for a protective order prohibiting Mother from independently contacting his employer.[2] On August 5, 2014, the court held a hearing[3] and issued an order stating that, "[a]s there is no petition before the court for modification or contempt, the court finds that both parties' motions regarding discovery shall be denied as moot." Appellant's Appendix at 46.

[6]     On August 8, 2014, Mother filed a Verified Motion for Rule to Show Cause requesting the court to order Father to appear and show cause why he should not be punished for contempt of the court's orders. Mother's motion for rule to show cause alleged in part that pursuant to the dissolution decree, Father is obligated to provide his tax returns, W-2s, 1099s, K-1s, and other appropriate financial documentation upon the request of Mother; that Father willfully and knowingly failed and/or refused to comply with the dissolution decree and the agreed order of modification; that Mother had specifically requested Father's

---

[2] The record does not include a copy of this motion.

[3] The record does not include the transcript of this hearing.

income documentation and had provided him with a detailed request for production of documents; that Father had refused to provide that documentation in spite of the fact there were two current court orders obligating him to do so; and Father should be ordered to pay her attorney fees.

[7] On November 17, 2014, Mother filed a motion to compel discovery which stated that, on or about August 13, 2014, Father was served with her request for production of documents,[4] which again requested copies of Father's income tax returns for the years 2011, 2012, and 2013 including W-2s, 1099s, and other documentation illustrative of Father's income for those years from all sources; that on or about October 27, 2014, the parties met at the office of Father's counsel to inspect certain documents requested in the request for production of documents;[5] and that, on or about October 28, 2014, counsel for Mother sent Father's counsel a letter outlining the documents which still had not been produced. Mother also argued that Father should be held accountable for her attorney fees. The October 28, 2014 letter by Mother's counsel attached to the

[4] This request for production of documents appears to be identical to the Mother's March 2014 request for production of documents.

[5] Mother's Exhibit A includes an email message sent on the morning of October 13, 2014, from Father's counsel to Mother's counsel stating that he was looking for a response to the question of what Father was in contempt for not providing and that the decree set forth that the parties would exchange their documents at counsel's office for inspection. The exhibit includes a reply email message sent the afternoon of October 13, 2014, from Mother's counsel to Father's counsel stating that as discussed several times before Mother was missing Father's 1040 tax returns as well as all supporting schedules, K-1s, 1099s, and the other documents listed in the request for production of documents, and that hopefully those would be provided to Mother at the inspection which was tentatively scheduled for October 24, 2014 and later rescheduled for October 27, 2014.

motion to compel stated in part "[t]hank you very much for meeting us to exchange documents on October 27, 2014" and:

> Tax returns were viewed in person at [Father's counsel's] office on 10/28/14 [sic]. Not provided were the W-2, K-1's or and 1099's for the 2011 and 2012 returns. No tax return provided for 2013, and only a partial K-1. *Still need to receive the full and complete W-2's, K-1's, 1099's, or other evidence of income for the tax years 2011, 2012, and 2013, along with the full state and federal 2013 tax return.*

*Id.* at 56.

[8] On December 16, 2014, the court held a hearing. Counsel for Mother argued in part that the motion for rule to show cause was filed based on Father's refusal to comply with the dissolution decree and the agreed order of modification and that Mother had made numerous attempts to obtain information. Mother's counsel stated that a time for inspection of documents was scheduled and ultimately took place on October 27, 2014, that he met at the office of Father's counsel, that "what we were provided was two pages from the partnership K-1 for [Father's] law firm, no supporting schedules, we had nothing signed, we had numbers indicating income and expenses, nothing supporting what those expenses are," and that "[m]y client believes that some personal expenses are included in that, things like a $900.00 a month car payment, other things that benefit [Father] personally, but as we stand here today with all of this activity we still haven't be[en] given access to those schedules which we[']re entitled to." Transcript at 6-7. Mother's counsel further argued that, while it was mid-December 2014, Father had not filed his 2013 taxes yet and that he had

"nothing with any reliability, nothing that is official to provide us with information with regard to what his income is for 2013." *Id.* at 7. Mother's counsel asked the court to assist Mother in obtaining the information she had been seeking for months, and presented an exhibit showing Mother had incurred $5,565 in attorney fees in her effort to obtain the documents to which she was clearly entitled under the decree and the agreed order of modification. Her counsel requested the court to compel Father to provide his income information, to find Father in contempt, and to award Mother attorney fees, and argued that "[i]t shouldn't be this hard to get what the parties worked so hard to negotiate for in their agreement and here we are going through all of this to get that information." *Id.* at 9.

[9] Counsel for Father argued that the motion for rule to show cause was filed on August 8, 2014, prior to the motion to compel discovery, that the inspection was not discussed until he suggested it in October 2014, that the first attempted inspection occurred on October 24, 2014, that Mother did not bring her documents, and that a second inspection was scheduled. Father's counsel argued that he did not hear at the inspection that there was a problem with the documents he produced, and that the agreed modification order "requires very specifically in addition to weekly child support [F]ather[']s going to pay bonus support, gross over gross" and that "[w]ell, [Father] unfortunately has not exceeded his quarterly amounts so he has not owed any bonus income." *Id.* at 14. His counsel stated that Father provided the quarterly documentation on which his bonus income would have been calculated and provided his firm's

profit receipts, his distributions, and his K-1 for 2013, and that, at the inspection, Father provided the 2013 K-1 and 2010 through 2012 tax returns. He requested the court to deny the rule to show cause, to dismiss the motion to compel, and to consider awarding attorney fees in favor of Father. In response, Mother's counsel argued that he still had not heard when he would receive legitimate information for 2013, that Mother is entitled to specific documents and schedules, which she has not received, and that the quarterly information provided by Father was totally unreliable with much of it blacked out or redacted.

[10] The court entered an order dated December 16, 2014, and file-stamped December 18, 2014, which noted in part that Section 3.1 of the dissolution decree provided that Father would make available for inspection, upon written request by Mother, his tax information, including any 1040, W-2, 1099, or K-1 forms and supporting schedules, that Father was obligated to make such information available from tax year 2010 and each year thereafter as long as he had an obligation to provide financial support for the minor child, and that Mother's position was that Father failed to comply with the court's orders requiring him to provide such information to her. The court's order further provided in part:

> 5. An inspection of documents relating to [Father's] tax information was made in October, but did not include certain tax information from tax years 2013, 2012 and 2011.
>
> * * * * *

8.   The Court finds that [Father] has failed to abide by the orders of the Court. The [dissolution decree] does not provide that [Mother] is only entitled to request [Father's] tax returns and supporting information from only the immediately past tax year. She is entitled to inspect such information from tax year 2010 and forward, upon written request, and upon supplying [Father] with copies of her corresponding tax information. While the Court does not find that this provision exposes [Father] to harassment of repeated requests for the same information, the Court does not find that [Mother] is limited in her request to only inspecting the past year's information. [Father] did not make such information available to [Mother] for inspection, and is therefore in contempt.

* * * * *

10.  As a sanction for his contempt, the Court will order [Father] to provide to [Mother's] counsel within thirty (30) days, copies of his federal and state income tax returns and supporting documentation, including 1040 forms, all supporting schedules, W-2 forms, 1099 forms, K-1 forms, and Indiana income tax returns for tax years 2011 through 2013. [Father] shall also provide copies of any forms submitted to the Internal Revenue Service or the Indiana Department of Revenue to request an extension to file income tax returns, if any have been filed, for tax years 2011 through 2013. [Father] shall further be ordered to provide copies of any and all W-2, 1099 or K-1 forms for tax year 2014 to [Mother] not later than February 15, 2015.

11.  As a further sanction for his contempt, the Court will Order [Father] to fully respond to [Mother's] request for production of documents within thirty (30) days of this Order.

12.  As a final sanction for his contempt, the Court will Order [Father] to pay a portion of [Mother's] attorney fees, in the

amount of $3,000 within forty-five (45) days of this Order. Any amount which remains unpaid shall be entered as a judgment against [Father] and in favor of [Mother's] counsel.

Appellant's Appendix at 21-22. Father filed a Consolidated Motion to Correct Errors or, in the Alternative, Motion for Relief under Trial Rule 60(B) and Request for Hearing, and following a hearing the court denied his motion.

### *Discussion*

[11] The issue is whether the court abused its discretion in finding Father in contempt. Whether a party is in contempt of court is a matter within the trial court's discretion. *J.M. v. D.A.*, 935 N.E.2d 1235, 1243 (Ind. Ct. App. 2010), *reh'g denied*.

[12] Father contends in part that the trial court did not issue a rule to show cause, that he did not willfully violate the terms of the dissolution decree, and that Mother's motion for rule to show cause did not provide him with proper notice under the contempt statutes. Mother argues in part that, at the time of the inspection, Father did not provide all of the tax documents required by the dissolution decree, that Father waived any argument regarding notice of the contempt allegations as he failed to raise the issue below, and that he had notice of the accusations against him and an opportunity to be heard.

[13] Contempt of court involves disobedience of a court order which undermines the court's authority, justice, and dignity. *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). There are two types of contempt: direct and

indirect. *Id.* Direct contempt involves actions occurring near the court that interfere with the business of the court and of which the judge has personal knowledge. *Id.* Contempt is indirect if it involves actions outside the trial court's personal knowledge. *Id.* "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." *Id.*

[14] The trial court here found Father to be in contempt of the dissolution order. Generally, a person who willfully disobeys any order lawfully issued by any court of record or by the proper officer of the court is guilty of indirect contempt. *Id.* (citing Ind. Code § 34-47-3-1). As such, this case involves indirect contempt. *See id.*

[15] Indirect contempt proceedings require an array of due process protections, including notice and the opportunity to be heard, and these protections are set forth at Ind. Code § 34-47-3-5.[6] *Id.* at 1210-1211. If no rule to show cause is

---

[6] Ind. Code § 34-47-3-5 provides:

    (a)    In all cases of indirect contempts, the person charged with indirect contempt is entitled:

        (1)    before answering the charge; or

        (2)    being punished for the contempt;

    to be served with a rule of the court against which the contempt was alleged to have been committed.

    (b)    The rule to show cause must:

        (1)    clearly and distinctly set forth the facts that are alleged to constitute the contempt;

        (2)    specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

issued in compliance with this statute, a court may lack the authority to hold a person in contempt. *In re Paternity of J.T.I.*, 875 N.E.2d 447, 451 (Ind. Ct. App. 2007). Strict compliance with the rule to show cause statute may be excused if it is clear the alleged contemnor nevertheless had clear notice of the accusations against him or her, for example because he or she received a copy of an original contempt information that contained detailed factual allegations, or if he or she appears at the contempt hearing and admits to the factual basis for a contempt finding. *Id.*

[16] We have also held:

> It lies within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of its order. *Macintosh v. Macintosh*, 749 N.E.2d 626, 631 (Ind. Ct. App. 2001), *trans. denied.* Unlike criminal indirect contempt, the primary objective of a civil contempt proceeding is not to punish the contemnor but to coerce action for the benefit of the aggrieved party. *Thompson v. Thompson*, 811 N.E.2d 888, 905 (Ind. Ct. App. 2004), *trans. denied . . . .* "Nevertheless, a contempt order which neither coerces compliance with a court order or compensates the aggrieved party for loss, and does not offer an

---

(3)     specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

(c)     The court shall, on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt.

(d)     A rule provided for under subsection (b) may not issue until the facts alleged to constitute the contempt have been:

(1)     brought to the knowledge of the court by an information; and

(2)     duly verified by the oath of affirmation of some officers of the court or other responsible person.

> opportunity for the recalcitrant party to purge himself, may not
> be imposed in a civil contempt proceeding." *Flash* [*v. Holtsclaw*],
> 789 N.E.2d [955, 959 (Ind. Ct. App. 2003), *trans. denied*].

*In re Paternity of M.F.*, 956 N.E.2d 1157, 1163 (Ind. Ct. App. 2011) (citing *In re Paternity of M.P.M.W.,* 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009)).

[17] In this case, the court did not issue a rule to show cause in accordance with Ind. Code § 34-47-3-5. Following the filing of a Mother's motion for a rule to show cause in August 2014 and motion to compel discovery in November 2014, a hearing was held on December 16, 2014. However, the record is devoid of any order issued by the court prior to the hearing ordering Father to show cause why he should not be attached and punished for contempt at a specific time and place in court, per Ind. Code § 34-47-3-5(b)(3), which is mandated by the statute. Moreover, "[t]o avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt." *In re Paternity of M.F.*, 956 N.E.2d at 1164 (citing *Henderson*, 919 N.E.2d at 1212 n.3). The court's December 16, 2014 order did not indicate the manner in which Father could purge himself of the contempt. *See Henderson*, 919 N.E.2d at 1212 n.3 (noting one problem with the court's contempt order was that it did not indicate the manner in which the husband could purge himself of the contempt).

[18] Based upon the lack of a rule to show cause from the court in accordance with Ind. Code § 34-47-3-5 as well as the lack of an opportunity in the December 2014 order for Father to purge himself of any finding of contempt, we reverse

the trial court's order finding Father in contempt. *See In re Paternity of M.F.*, 956 N.E.2d at 1164-1165 (holding that the court's order did not indicate the manner in which the mother could purge herself of the contempt and that the court abused its discretion in finding her in contempt); *Henderson*, 919 N.E.2d at 1210-1212 (reversing finding of contempt and noting that the court's order did not indicate how the appellant could purge himself of the contempt); *In re Paternity of M.P.M.W.*, 908 N.E.2d at 1210 (noting that, unlike a contempt sanction conditioned on the payment of money or the accomplishment of a single task, the contempt sentence could not be purged). Further, to the extent the court ordered Father to pay attorney fees as a sanction for contempt, we reverse that order as well. *See In re Paternity of M.F.*, 956 N.E.2d at 1165.

## *Conclusion*

[19] For the foregoing reasons, we reverse the trial court's order finding Father in contempt.

[20] Reversed.


Kirsch, J., and Mathias, J., concur.