## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2020, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory K. Blanford
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ryan J. Schrader, | March 31, 2020 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 19A-DR-2236 |
| v. | Appeal from the St. Joseph Circuit Court |
| Marcy C. Schrader, | The Honorable William L. Wilson, Magistrate |
| *Appellee-Respondent,* | Trial Court Cause No. 71C01-1512-DR-1147 |

**Robb, Judge.**

# Case Summary and Issue

[1] Ryan Schrader appeals the trial court's order finding him in contempt for failure to pay money owed to his ex-wife Marcy. Ryan raises one issue for our review: whether the trial court properly used its contempt power to coerce compliance with a post-dissolution order that Ryan pay to Marcy the value of a lost asset. Concluding the trial court did not abuse its discretion in using its contempt power to find Ryan in contempt, we affirm.

# Facts and Procedural History

[2] Ryan and Marcy were married in 2002 and separated in 2015. On July 29, 2016, the trial court entered a Decree of Dissolution dissolving their marriage and incorporating a Mediation Settlement Agreement between the parties. The Settlement Agreement provided, in relevant part, that Ryan would become the sole owner of the marital residence and Marcy would retain the parties' two timeshares with Disney Vacation Club. Ryan was to "assume, timely pay and indemnify [Marcy] as to the balances owed on the two loans [and] pay all maintenance fees or other expenses related to the timeshares which accrued through December 31, 2016, which the parties agree total $1,032.05, and . . . indemnify and hold [Marcy] harmless as to such fees and expenses." Corrected Appellant's Appendix, Volume III at 14. More generally, the parties mutually agreed to indemnify and hold each other harmless "by reason of any failure on the part of either of them to timely pay obligations being assumed by them for payment[,]" *id.* at 18, and "to do all things necessary to carry this [Settlement

Agreement] into effect[,]" *id.* at 19.  They also represented that they had each fully disclosed to the other their financial situations.

[3]    On September 6, 2016, Marcy filed a motion for rule to show cause alleging, in part, that Ryan had failed to make the timeshare payments as required by the Settlement Agreement and Marcy was unable to "enjoy the Time Share that she was awarded through a Marital Settlement Agreement due to the lack of payments." *Id.*, Vol. IV at 2.  Following a hearing, the trial court issued an order on March 17, 2017, resolving the rule to show cause as follows:

> [Ryan] failed to pay Disney Vacation Club loans and the timeshares which were in foreclosure.  Before he signed the Mediation Settlement Agreement, he knew the timeshare loans were in default and foreclosure was imminent.  [Marcy] did not learn of this until after the agreement was incorporated into the Decree.  The agreement was that she would have ownership of the timeshares and [Ryan] should pay off the timeshare loans.  He would also pay consolidated marital debts.  In return, [Ryan] had ownership of the marital home (he is current on his mortgage payments) and he retained his retirement accounts.  Based upon the obligation ordered regarding the timeshares [sic] loans and the intentional failure to make required payments, [Ryan] is found to be in contempt of court.  Apparently, it is beyond any available redemption period and the timeshares cannot be saved.  [Ryan] must pay [Marcy] $22,000.00 to satisfy his obligation.  This may be satisfied by a monthly payment of $200.00 plus interest at 5% per annum, or an additional $10.00 per month.

*Id.* at 8.  On July 19, 2018, Ryan and Marcy signed an Agreed Stipulation Regarding Payment of Judgement [sic] pursuant to which Ryan agreed to pay Marcy "the sum of $250.00 per month until such time as the judgement [sic] is

satisfied." *Id.* at 11. The first payment was to be made on or before August 10, 2018, with each subsequent payment to be made on or before the 10th of each succeeding month. On July 30, 2018, the trial court approved the stipulation and ordered the parties to carry out its terms.

[4] On September 28, 2018, Marcy filed a motion requesting a status conference be scheduled because Ryan had failed to comply with the terms of the stipulation in that he had not made a single payment (and should have made at two). At Ryan's request, the conference was continued. Ryan then asked for and received a change of judge. When the status conference was reset for December in front of the new judge, Ryan failed to appear.

[5] On February 7, 2019, Marcy filed a second motion for rule to show cause regarding the timeshares alleging that Ryan had not yet made a single payment pursuant to the Agreed Stipulation and asking that he be held in contempt. Ryan alleged at the rule to show cause hearing, as he does here, that contempt was not an available remedy. The trial court took the matter under advisement and entered a written order on that possibly dispositive issue on March 27, 2019, determining that contempt "may not be unavailable" and ordering an evidentiary hearing "concerning the willfulness of Ryan's failure to pay." *Id.*, Vol. V at 3. Ryan filed a motion to reconsider which the trial court denied upon concluding that its earlier ruling was correct.

[6] The trial court then held an evidentiary hearing to determine whether Ryan had willfully failed to pay. Ryan was the sole witness at the hearing. He testified as follows:

> [Marcy's counsel]: When it comes to the judgment or the – you know, the Disney timeshare, would you agree you've made no payments toward that whatsoever?
>
> [Ryan]: Correct.
>
> [Marcy's counsel]: Okay. And why haven't you made any payments?
>
> [Ryan]: Because I don't see where it should be paid for through me, because it went into foreclosure.
>
> [Marcy's counsel]: Okay. So you don't think you should have to pay it at all?
>
> [Ryan]: No.
>
> [Marcy's counsel]: And did you sign the property settlement agreement saying you would pay it?
>
> [Ryan]: Yes, I did.
>
> * * *
>
> [Marcy's counsel]: And you know there's now an amount of money you have to pay [Marcy]?

[Ryan]:  Yes, I do.

[Marcy's counsel]:  But you just don't agree with that?

[Ryan]:  I don't agree with it.

* * *

[Marcy's counsel]:  So you were ordered to pay $200 per month against this judgment; correct?

[Ryan]:  Let's just say yes. . . .

[Marcy's counsel]:  And you signed an agreement saying you would pay $250 a month towards this, this money owed; correct?

[Ryan]:  Correct.

[Marcy's counsel]:  And when you signed that agreement, did you have any intention of making those payments?

[Ryan]:  No.

[Marcy's counsel]:  Okay.  So why did you sign the agreement?

[Ryan]:  Because you would still be coming after me if I didn't, like you are now.

Transcript, Volume 2 at 8-9, 18-19.  Over Ryan's continued objection that contempt is not a remedy for failure to pay a money judgment, the trial court issued an order finding Ryan in contempt:

17. Ryan was asked directly whether he ever intended to pay the $250 per month as stated in the stipulation he signed, and Ryan replied that he did not. The Court finds this small portion of Ryan's testimony to be credible.

18. The record in this case and the evidence presented at the [contempt] hearing demonstrates clearly that Ryan will misrepresent important facts, such as the circumstances surrounding the Disney Vacation Club being in default, and that he will "promise" anything to achieve what he thinks are his goals. For example, Ryan promised to pay the Disney Vacation Club costs in the marital settlement agreement and later promised to pay Marcy pursuant to the stipulation when, in fact, he obviously never intended to do so – by his own admission as to the latter promise.

19. The Court has rarely seen this high level of blatant dishonesty on the part of a party in a marriage dissolution case. Ryan's conduct in this case not only shows contempt for the Court, but it shows contempt toward the mother of his children.

20. The Court concludes that Marcy has proven by clear and convincing evidence that Ryan knew of the July 2018 stipulation and order, that he willfully failed to pay the $250 each month as he promised he would and as ordered, and that he has no justification for his failure to do so. Therefore, Ryan [] is found to be in contempt of court.

* * *

26. As a sanction for Ryan's willful failure to comply with this Court's order of July 30, 2018, the Court orders as follows:
    a. Ryan shall pay the judgment of $22,000, plus interest up to the present at the rate of 5% per annum and continuing after the entry of this order at the rate of 8% per annum in

monthly payments of $250 payable on September 10, 2019 and on the 10th of each [month] thereafter until the judgment is paid in full.

     b. If Ryan fails to make any payment as ordered, he is ordered to pay to Marcy the amount of $15 per day for each day he does not make a required payment. Such payments shall not be applied toward the judgment owned by Marcy against Ryan. Any unpaid amounts ordered under this paragraph shall not constitute a judgment against Ryan. In reality, Ryan can avoid the $15 per day payment obligation so long as he makes the judgment payments as ordered above in a timely manner.

     c. Ryan is also ordered to pay attorney's fees to [Marcy's counsel] in the sum of $1,500 as a further sanction for his contempt. This award shall be enforceable in [counsel's] own name as provided by statute.

Appealed Judgment at 5-8.[1] Ryan now appeals the trial court's order of contempt.

# Discussion and Decision

## I. Standard of Review

We first note that Wife has chosen not to file a brief. When the appellee fails to file a brief on appeal, we do not undertake the burden of developing arguments for that party. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error, namely "error at first sight, on first

---

[1] Citation to the appealed judgment is based on the .pdf pagination.

appearance, or on the face of it." *Spencer v. Spencer*, 990 N.E.2d 496, 497 (Ind. Ct. App. 2013) (quotation omitted).

[8] As for the finding of contempt, "[i]t is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard." *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quotation omitted). "We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding." *Id*. Because a trial court has the inherent power to "maintain[ ] its dignity, secur[e] obedience to its process and rules, rebuk[e] interference with the conduct of business, and punish[ ] unseemly behavior[,]" *id.,* it is given great deference in contempt actions, *id.* at 129; *see also* Ind. Code § 34-47-3-1 (statute defining indirect contempt of court is legislative recognition of trial courts' inherent power to cite and punish for contempt).

## II. Contempt Finding

[9] Ryan contends the current contempt finding is in error because although the court's March 17, 2017 order finding Ryan in contempt for failing to pay the loans for the timeshares was within the trial court's authority, that order also converted Ryan's obligation under the Settlement Agreement from an obligation that could be enforced by contempt – performance of his obligation to pay the timeshare loans – into one that cannot be – payment of money to Marcy. Therefore, he argues, the most current contempt order cannot stand.

Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender has notice. *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). It lies within the inherent power of the trial court to fashion an appropriate remedy for the disobedience of its order. *In re Paternity of M.P.M.W.*, 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009). Civil contempt is for the benefit of a party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party. *Cowart v. White*, 711 N.E.2d 523, 530 (Ind. 1999), *clarified on reh'g on other grounds*, 716 N.E.2d 401 (1999). The primary objective of a civil contempt proceeding is not to punish the contemnor but to coerce action for the benefit of the aggrieved party. *Thompson v. Thompson*, 811 N.E.2d 888, 905 (Ind. Ct. App. 2004), *trans. denied*.

> Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully. The determination of whether to find a party in contempt permits the trial court to consider matters which may not, in fact cannot, be reflected in the written record. The trial court possesses unique knowledge of the parties before it and is in the best position to determine how to maintain its "authority, justice, and dignity" and whether a party's disobedience of the order was done willfully.

*Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202-03 (Ind. 2012) (citations omitted).

[11] Because of the prohibition against imprisonment for debt, our supreme court has held that, with limited exceptions, "all forms of contempt are *generally*

unavailable to enforce an obligation to pay money." *Cowart*, 711 N.E.2d at 531
(emphasis added); *but see* Ind. Const., Art. 1, § 22 (stating, in part, "there shall
be no imprisonment for debt, except in the case of fraud") and *Pettit v. Pettit*, 626
N.E.2d 444, 447 (Ind. 1993) (holding that "contempt is always available to
assist in the enforcement of child support" including a "child support obligation
that was transformed into a money judgment"). However, Indiana Code
section 31-15-7-10 provides, in relevant part, "Notwithstanding any other law,
all orders and awards contained in a dissolution of marriage decree . . . may be
enforced by [] contempt[.]" Although section 31-15-7-10 "is certainly subject to
the constitutional prohibition on *imprisonment* for debt[,]" there is no other bar
"to a court's use of contempt to enforce an order that requires performance
instead of payment *or to the use of sanctions other than imprisonment.*" *Cowart*, 711
N.E.2d at 531 (emphasis added). Civil sanctions, including additional civil
damages, are not prohibited by Article 1, section 22. *Id*.

[12]     We acknowledge the general rule that a trial court's use of its contempt power
is limited to enforcing an order that requires performance instead of payment of
a fixed sum and that Trial Rule 69 proceedings supplemental should be used to
enforce a money judgment.[2] *See Whittaker v. Whittaker*, 44 N.E.3d 716, 719

---

[2] Ryan contends that Marcy "has repeatedly sought to enforce the money judgment through proceedings
supplemental" and that this "underscores the unavailability of contempt" here, directing us to pages 9 and 10
of Volume II of the Appellant's Appendix. Corrected Appellant's Brief at 9. Those pages are part of the
Chronological Case Summary and show that one Motion for Proceedings Supplemental was filed on
November 20, 2017. That motion was filed by Marcy's attorney seeking to enforce the judgment entered
against Ryan for payment of Wife's attorney fees in the dissolution decree plus $750.00 ordered to be paid to

(Ind. Ct. App. 2015). The trial court's finding of contempt in this case, however, was based on Ryan's actions and failures to act that resulted in Marcy losing the benefit of an asset to which she was entitled pursuant to the Settlement Agreement. Specifically, the trial court's contempt order reads:

> The Court concludes that Marcy has proven by clear and convincing evidence that Ryan knew of the July 2018 stipulation and order, that he willfully failed to pay the $250 each month as he promised he would and as ordered, and that he has no justification for his failure to do so.

Appealed Judgment at 6, ¶ 20. Ryan violated both the letter and the spirit of the Settlement Agreement and the July 2018 stipulation. By Ryan's actions and inactions (failing to disclose relevant information about the timeshares at the time of the Settlement Agreement despite representing that he had fully disclosed his financial situation, failing to bring the loans current and keep them up to date in order to meet his obligation to Marcy, and entering into a stipulation he admitted he never intended to honor), Ryan failed to meet his obligation and hold Marcy harmless as he agreed to do and Marcy lost the opportunity to enjoy the marital asset to which she was entitled and has since been denied even the value of that asset. Importantly, the trial court did not need to evaluate Ryan's state of mind to determine whether his conduct was willful, *see Witt*, 964 N.E.2d at 202, as Ryan plainly stated at the contempt

---

him in the March 2017 contempt order. Ryan points to no other evidence in the record before us that *Marcy* has pursued proceedings supplemental.

hearing that he never had any intention of making payments to Marcy because he did not believe he should have to pay her the value of an asset that was lost, notwithstanding it was lost due to his conduct. In sum, the trial court was within its discretion in finding Ryan in contempt.

[13] Ryan's violation of the dissolution decree in the first instance and his defiance of the orders that were meant to make Marcy whole thereafter amount to much more than failing to meet an obligation to pay a debt. Instead, the violation created "inconvenience and frustration suffered by the aggrieved party" that can be taken into account in fashioning a remedy. *Cowart*, 711 N.E.2d at 532. The first contempt order was aimed at compensating Marcy for the loss of the timeshares by awarding her monetary damages for their value. In other words, because of the nature of Ryan's contempt in failing to abide by the terms of the Settlement Agreement, he could no longer be coerced to perform that specific obligation and monetary damages were the only practical recourse to give Marcy the benefit of her bargain. The most current contempt order is intended to coerce Ryan into honoring his now monetary obligation *and* to compensate Marcy if he continues to refuse to be held accountable to her or to the courts. Accordingly, the trial court imposed on Ryan civil sanctions in the form of monetary penalties if he fails to pay the original obligation as ordered. The trial court also offered Ryan a way to purge his contempt: "In reality, Ryan can avoid the [penalty] so long as he makes the judgment payments as ordered above in a timely manner." Appealed Judgment at 7. The trial court did not abuse its discretion in the sanction it imposed.

# Conclusion

Ryan has not established prima facie error; the trial court did not abuse its discretion in finding Ryan in contempt for willfully failing to abide by a court order of which he had knowledge. The judgment of the trial court is affirmed.

Affirmed.

Bradford, C.J., and Altice, J., concur.